In the Matter of COLONIAL REALTY INVESTMENT CO. et al., Debtors.

CHARLESTOWN SAVINGS BANK, a Secured Creditor in these Proceedings, Appellant,

v.

Gordon A. MARTIN, Jr., Trustee of Colonial Realty Investment Co., et al., Appellees.

No. 74–1402.

United States Court of Appeals, First Circuit.

Argued Jan. 7, 1975.

Decided May 15, 1975.

Jon D. Schneider, Boston, Mass., with whom Henry B. Shepard, Jr., and Goodwin, Procter & Hoar, Boston, Mass., were on brief, for appellant.

Daniel M. Glosband, Boston, Mass., with whom Widett & Widett, John J. Curtin, Jr., and Bingham, Dana & Gould,

Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Charlestown Savings Bank appeals from an order of the District Court for Massachusetts requiring it to turn over to the trustees of the debtors five apartment complexes of which it had taken possession as a mortgagee for default in the payment of mortgage obligations.

Debtors are three limited partnerships managed and controlled by the same two general partners. They appear to be the legal or equitable owners of between seventy and eighty properties containing some 9,000 apartment units and encumbered by mortgages held by over one hundred mortgagees.[1] More than seven thousand limited partners invested approximately $30,000,000 in debtors.

On September 20, 1974, appellant took possession of the five properties involved in the present appeal. Legal title to four of the properties was held by nominee trusts of which debtors' general partners were the trustees. Debtors held legal title to the fifth property. On September 23, 1974, debtors filed petitions for arrangement under Chapter XII of the Bankruptcy Act, 11 U.S.C. § 801 et seq., in which they requested that the court enjoin mortgagees, lessors under sale and leaseback arrangements and other secured creditors from taking possession of property alleged to belong to the debtors, and that mortgagees in possession be required to return such property to the control of the debtors. On September 24, 1974, the district court ordered tenants in property owned by debtors to pay their October 1st rent to debtors. On September 25, the district court entered a temporary restraining order enjoining the commencement or continuation of foreclosure proceedings by all secured creditors. On September

30, appellant appeared specially to move for modification of the court's order with respect to rental payments and to request that mortgagees in possession be permitted to continue in possession. In the ensuing month the district court held half a dozen hearings on the motions of various creditors regarding the immediate disposition of property legally or equitably owned by debtors. On October 31, 1974, the court entered the formal turnover order of which appellant seeks review.

Appellant contends that the summary jurisdiction of the district court under Chapter XII of the Bankruptcy Act does not encompass turnover orders directed to mortgagees in possession. Appellant's argument is in essence a challenge to the statutory power of the court, for if the Act empowers the court to order a turnover of property in the hands of a mortgagee then a dispute whether such an order is appropriate is a "controversy in bankruptcy" apt for summary disposition. Taylor v. Voss, 271 U.S. 176, 181, 46 S.Ct. 461, 70 L.Ed. 889 (1926); Katchen v. Landy, 382 U.S. 323, 327–29, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); Continental Illinois National Bank & Trust Co. v. Chicago Rock Island & Pacific Ry. Co., 294 U.S. 648, 681–82, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); 9 Collier on Bankruptcy ¶ 3.01, at 795–96 (hereinafter, Collier).

▮ In proceedings under Chapters I–VII of the Act, 11 U.S.C. §§ 1–112, bankruptcy courts " . . . have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession." Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940); Cline v. Kaplan, 323 U.S. 97, 98–99, 65 S.Ct. 155, 89 L.Ed. 97 (1944). Where, as here, a mortgagee has taken possession of property of the debtor prior to filing, the bankruptcy court has no power under Chapters I–VII to

---

[1]. Appellant has pursued its appeal on the basis of a skeletal record rather than countenance the delay entailed in securing a transcript of the limited hearings held by the district court. Our statement of the facts is drawn chiefly from the briefs.

order a turnover. Thompson v. Magnolia Petroleum Co., *supra*; Cline v. Kaplan, *supra*; 4a Collier ¶ 70.16. The only court of appeals which has addressed the issue here presented applied, without explanation, the precedents pertinent to Chapters I–VII,[2] ignoring language in Chapter XII which, at least when read literally, describes powers very different from those set forth in Chapters I–VII. § 507, 11 U.S.C. § 907; *see infra.* Section 402, 11 U.S.C. § 802, states that Chapters I–VII shall apply to Chapter XII proceedings, but only " . . insofar as they are not inconsistent or in conflict with the provisions . . . " of Chapter XII. The crucial question remains whether anything in Chapter XII empowers a court to enter an order such as that from which appellant seeks relief. If there is such authority it is inconsistent with Chapters I–VII, and would displace those provisions for Chapter XII proceedings. Thus, we turn to the Act itself, and its history, to determine what powers Congress intended to confer on the Chapter XII court. United States v. New England Coal and Coke Co., 318 F.2d 138, 142–43 (1st Cir. 1963).

The Chandler Act enacted in 1938 effected a general modernization of the Bankruptcy laws. Pub.L.No.696, 75th Cong., 3d sess. The most substantial changes wrought by the Chandler Act involved not the liquidation provisions of the existing law, but those dealing with reorganizations, compositions and arrangements, §§ 12, 74 and 77B of the then existing law.[3] Congress sought both to remedy abuses prevalent under

existing law, and to provide effective machinery for the rehabilitation of weakened but still viable business enterprises.[4] Chapter XII was enacted principally " . . . to furnish the same relief to individual debtors as is now available to corporations under Section 77B or under Chapter X of this bill." H.R. Rep.No.1409, 75th Cong., 1st sess. (1936) at 51.[5] Both Chapters X and XII are formulated to affect the rights of secured as well as unsecured creditors. An arrangement under Chapter XII must

" . . . include provisions modifying or altering the rights of creditors who hold debts secured by real property or a chattel real of a debtor . . . ." § 461(1), 11 U.S.C. § 861(1).

Relief under Chapter X is limited to corporations, § 106(5), 11 U.S.C. § 506(5), while Chapter XII is available to a person " . . . other than a corporation . . . ", § 406(6), 11 U.S.C. § 806(6). Each of the two Chapters contains identical language vesting the court with " . . . exclusive jurisdiction of the debtor and his property, wherever located", §§ 111 and 411, 11 U.S.C. §§ 511 and 811, and stating that the

"trustee appointed under this chapter, upon his qualification, or if a debtor is continued in possession, the debtor, shall become vested with the rights, if any, [of a receiver or trustee appointed in a prior mortgage foreclosure or equity proceeding in any other court] in such property and with the right to the immediate possession thereof. The trustee or debtor in possession shall

**2.** In re Decker, 465 F.2d 294 (3d Cir. 1972). Both appellant and appellees acknowledge that the extent of the power of a Chapter XII court over mortgagees in possession is not wholly self-evident, particularly in light of the astounding paucity of authority on Chapter XII, and they have assisted us greatly by submitting thoughtful and straightforward briefs.

**3.** Section 77B had been enacted as an emergency measure only four years earlier. Act of June 7, 1934, 48 Stat. 911.

**4.** *See* 6 Collier ¶¶ 0.05–0.08; 9 Collier ¶ 2.01[4], for a detailed analysis of the history of the

relevant provisions of the Chandler Act. *See also* National Bankruptcy Conference Analysis of H.R. 12889 [the Chandler Act], Committee Print, 36–101 *passim.* Gerdes, Corporate Reorganizations Changes Effected by Chapter X of the Bankruptcy Act, 52 Harv.L.Rev. 1, 2–3.

**5.** The draftsmen of the Chandler Act viewed Chapter XII as a provision which would become increasingly important as the growth of corporate tax burdens encouraged non-corporate property ownership, a pattern then prevalent only in Chicago. Weinstein, The Bankruptcy Law of 1938, A Comparative Analysis at 296.

also have the right to immediate possession of all property of the debtor in the possession of a trustee under a trust deed *or a mortgagee under a mortgage.*" §§ 257 and 507, 11 U.S.C. §§ 657 and 907 (emphasis added).[6]

The Senate report states that section 507 as in the case of "the analogous section 257 of Chapter X" includes "provisions dealing with the divesting of the rights and possession of a prior receiver, indenture trustee, and mortgagee in possession." Sen.Rep.1916, 75th Cong., 3d sess. (1938) at 9.

■ We deem the language and history we have described persuasive indicia of Congress' intent to equip courts acting under Chapters X and XII with similar powers with which to execute similar missions. We see no cause to reject in our interpretation of Chapter XII the reasoning of those courts which have held Chapter X to confer upon the court summary jurisdiction over property in the hands of a mortgagee.[7] The purpose of Chapters X and XII is to restore, not to dismantle, the economically distressed debtor. The power to prevent secured parties from availing themselves of their contractual remedies upon default, and to compel those creditors who have acted with sufficient celerity to be in possession at the time of filing to return the debtor's property is essential to preserve the possibility of a successful rearrangement of the debtor's affairs. Little hope

of resuscitation would remain for the debtor disembowelled just prior to filing. The explicit language of section 507 affording the debtor or court appointed trustee the right to immediate possession of " . . . all property of the debtor in the possession of . . . a mortgagee under a mortgage" must be read to mean what it says, for it is an integral part of the machinery constructed by Congress in Chapter XII.[8]

■ Our conclusion that a Chapter XII court has summary jurisdiction to order a turnover of property in the hands of a mortgagee also compels our rejection of appellant's argument that because Massachusetts law treats a mortgagee as legal owner of mortgaged property, Cooperstein v. Bogas, 317 Mass. 341, 58 N.E.2d 131 (1944), Section 507, 11 U.S.C. § 907, does not permit the entry of such an order in Massachusetts. A national policy enacted by Congress in the exercise of its constitutional authority to establish "uniform Laws on the subject of Bankruptcies", U.S.Const. art. I, § 8, cannot be impeded by the idiosyncracies of local property laws. John Hancock Mut. Life Ins. v. Casey, 134 F.2d 162, 163 (1st Cir.), cert. denied, 319 U.S. 757, 63 S.Ct. 1176, 87 L.Ed. 1709 (1943); 6A Collier ¶ 14.03, at 1107.

■ Nor do we have any difficulty in concluding that the trustee is entitled to receive the rents from the subject properties. There is nothing in Chapter XII

---

**6.** Sections 187 and 442, 11 U.S.C. §§ 587 and 882, describe in identical terms the general duties and powers of trustees appointed under Chapters X and XII.

**7.** In re Franklin Garden Apartments, 124 F.2d 451, 454 (2d Cir. 1941); John Hancock Mut. Life Ins. Co. v. Casey, 134 F.2d 162, 163 (1st Cir.), cert. denied, 319 U.S. 757, 63 S.Ct. 1176, 87 L.Ed. 1709 (1944); Reconstruction Finance Corp. v. Kaplan, 185 F.2d 791, 793–95 (1st Cir. 1950).

We are unaware of any Chapter X precedent to the contrary, although there is disagreement regarding the findings required *prior* to the entry of a turnover order. *Compare* In re Riker Delaware Corp., 385 F.2d 124 (3d Cir. 1967) *with* Ruskin v. Griffiths, 250 F.2d 875 (2d Cir. 1958). Ambiguity has been injected into the situation by use of the term "plenary" to de-

scribe the hearing necessary before the entry of a turnover order where the context indicates use of the term in a descriptive rather than a jurisdictional sense. *See, e. g.,* In re Flying W Airways, Inc., 442 F.2d 320, 323 (3d Cir. 1971).

**8.** For all the similarities between Chapters X and XII appellant would have us abjure the analogy between the two. There are, appellant notes, important powers described in Chapter X absent from Chapter XII. It is true that the two chapters are different. Chapter X is a palimpsest bearing myriad traces of older provisions. 6 Collier ¶¶ 0.01–0.08. Chapter XII, though lineally descended from earlier law, was essentially new in 1938. *See* note 5, *supra.* The history of the Chandler Act and the context of the parallel provisions diminish, in our view, the significance of the differences.

from which one may infer an intent to distinguish between property and the income derived therefrom, and indeed such a distinction would be an anomaly in a chapter designed to enable the court to preserve the debtor's property while efforts to secure an arrangement continue. The cases decided under Chapter X support this view. In re Franklin Garden Apartments, 124 F.2d 451 (2d Cir. 1941); John Hancock Mut. Life Ins. v. Casey, *supra*; In re Philadelphia & Reading Coal & Iron Co., 117 F.2d 976 (3d Cir. 1941).

Even though the trustee is entitled to receive rents, however, this does not end our inquiry. Appellant objects to the district court's order which, while requiring accounting by specific properties, and preventing expenditures for other properties, permits the expenditure of income derived from the mortgaged properties

> " . . . in accordance with an allocation subsequently determined by this court, for expenses of administration related to these proceedings, including . . . without limitation, centrally incurred overhead, general and administrative expenses."

Appellant's fear is that rentals from mortgaged properties may be siphoned off in what may prove to be futile efforts to secure a satisfactory arrangement. While it has no objection to applying rental income to operating costs, taxes, maintenance, and mortgage payments—objectives of direct benefit to secured creditors—its position is that to permit rental income to be used for other purposes is to treat it "as part of the general assets in the trustee's hands", which we have forbidden in John Hancock Mut. Life Ins. v. Casey, 139 F.2d 207, 209 (1st Cir. 1943).

We think there is a tolerable middle ground, going beyond the use of rental income for the immediate and direct benefit of several creditors, but not approaching a treatment as "general assets", which serves the rehabilitative goal of Chapter XII while respecting the property rights of the secured creditors. The cases which have grappled with the problem of ascertaining the costs which may be paid out of income from mortgaged property have not given us any clear or consistent principle.[9] We do find suggestive the approach of First Western Savings and Loan Ass'n v. Anderson, 252 F.2d 544 (9th Cir. 1958). Although appellees have urged that this case teaches that the precise allocation should be left to the district court, we do not read it so expansively. While the court describes in expansive terms the discretion of the district court to do what is "reasonable and fair", 252 F.2d at 548, it hedges that language with a list of factors to be considered by the district court, including anticipated and actual benefit resulting to the secured creditors from the activities for which the costs are incurred. 252 F.2d at 548 n. 8.

While we find ourselves sympathetic with our reading of the approach in *First Western*, the order here appealed from raises issues not there considered. For *First Western* dealt with a cost allo-

---

9. *See, e. g.*, In re Franklin Garden Apartments, 124 F.2d 451, 454 (2d Cir. 1941) (administrative expenses payable out of rents only if mortgaged property "has received benefit through the proceeding . . . ."); John Hancock Mut. Life Ins. v. Casey, 139 F.2d 207, 209 (1st Cir. 1943) (rents not part of "general assets"); In re Philadelphia & Reading Coal & Iron Co., 117 F.2d 976, 978 (3d Cir. 1941) (costs of operation and administration of debtor's estate payable out of rents); United States v. Henderson, 274 F.2d 419, 423 (5th Cir. 1960) ("costs and expenses from which the mortgagee benefited or which might reasonably be expected to benefit" him chargeable to mortgaged property in discretion of district court); First Western Savings and Loan Ass'n v. Anderson, 252 F.2d 544, 548 (9th Cir. 1958) (" . . . court should balance the misfortune of having some allowances go unpaid against the possible inequity of charging them all against mortgaged property.")

All the cited cases deal with allowances in Chapter X proceedings. The relevant provisions in Chapter XII are, however, almost exact replicas of similar provisions in Chapter X. *Compare* §§ 241, 242, 244 and 246, 11 U.S.C. §§ 641, 642, 644 and 646 *with* §§ 491, 492, 493 and 495, 11 U.S.C. §§ 891, 892, 893 and 895.

cation at the end of reorganization efforts, when all the facts were known. Here we deal with an order entered in the early stages of reorganization efforts when it is impossible to predict with assurance the outcome of such efforts. The issue confronting us is the extent to which the interests of secured creditors may be affected to further the possibilities of rehabilitation of debtors.

■■■ The policy of Chapter XII is rooted in society's interest in substituting arrangement for liquidation where possible and confers powers on the court to insure a fair chance to realize a viable arrangement. It seems to us, consistent with the general scheme of Chapter XII, that if, at this threshold stage, a determination of probable benefit (or, at least, likely absence of injury) to secured creditors is made, subject to revision in the light of changing circumstances, secured creditors are protected against serious irreversible harm while permitting arrangement explorations to go forward.

■■■ We therefore hold that if it is contemplated that income from secured properties be chargeable with expenses of administration (other than operating costs, taxes, maintenance and mortgage payments), including efforts to work out an arrangement, there be a preliminary inquiry at the earliest possible time into the probability of benefit and detriment to secured creditors, from proposed proceedings and an explicit preliminary finding of probable benefit or, at least, no probable injury. The court's inquiry, necessarily a narrow one at this preliminary stage, need proceed only so far as is necessary to assure that the cost of activities which cannot reasonably be expected to benefit a secured creditor and which he has not caused to be incurred are not to his detriment charged to the income from property securing his

claim.[10] The finding should precede any diversion of rents and should be open to reconsideration and revision in the light of changing circumstances. In the instant case, since we only now announce this holding, the only course open to us is to direct the district court, which has continuing oversight of these proceedings, to make such a determination expeditiously.[11]

■■■ Appellant next argues that the district court should not have entered its order without first conducting full evidentiary hearings and making findings. Appellant, to hasten appellate review, chose to proceed without a transcript of the proceedings in the district court. Without such a record we will not review the sufficiency of those proceedings. F.R.A.P. 10(b); Chernack v. Radlo, 331 F.2d 170, 171 (1st Cir. 1964); 9 J. Moore, Federal Practice ¶ 210.05. There can be no doubt of the court's power to act with dispatch in entering orders to protect the debtor's property during the pendency of arrangement proceedings. It would be inimical to the purposes of Chapter XII to require that the district court become embroiled in comprehensive evidentiary hearings at the inception of the proceedings. Section 428, 11 U.S.C. § 828, automatically stays proceedings to enforce any lien on the real property of the debtor upon the filing of a Chapter XII petition. Meyer v. Rowen, 181 F.2d 715, 716 (10th Cir. 1950). Section 507, 11 U.S.C. § 907, gives the debtor or court appointed trustee an *immediate* right to possession of property in the hands of a mortgagee.

Within a reasonable time, however, upon motion of a secured creditor, the court should conduct hearings adequate to determine whether the petition of the debtor has been filed in good faith, and whether there is a sufficient possibility of a successful arrangement to justify

---

**10.** The considerations set forth in *First Western Savings and Loan*, 252 F.2d at 548, which we have discussed, *supra*, seem to us appropriate to the determination which the district court must make.

**11.** Here, where six months have passed since the entry of the district court's order, time in which the trustees have surely collected extensive data on debtors' status, the court should have little difficulty in making that determination.

whatever risk to the collateral of secured parties may be entailed.[12] In re Franklin Garden Apartments, *supra*; Ruskin v. Griffiths, 250 F.2d 875, 877 (2d Cir. 1958).[13]

Finally, appellant argues that four of the five properties which it was compelled to turn over to the trustees were not property of the debtors at all, as they were owned of record by trusts not debtors in the proceedings. Here again review is hampered by the abbreviated record on appeal. We proceed only so far as to say that we deem it implicit in § 507, 11 U.S.C. § 907, that other than legal ownership is sufficient to confer jurisdiction upon the Chapter XII court.

Affirmed.

---

**12.** This is the standard determination which the district court already contemplates. It is not to be confused with the earlier determination we have called for, *supra*, concerning the prospective impact of administrative costs on secured creditors.

**13.** A contrary view has been expressed with regard to Chapter X, principally by the Third Circuit. In re Riker Delaware Corp., 385 F.2d 124, 125–26 (3d Cir. 1967); In re Flying W Airways, Inc., 442 F.2d 320, 323–24 (3d Cir. 1971); n. 7, *supra*. But see Murphy, Restraint and Reimbursement: The Secured Creditor in Reorganization and Arrangement Proceedings, 30 Bus. Lawyer 15, 31.