**In re HOTEL ASSOCIATES, INC., Robert B. Miller, Stanton R. Miller, a partnership, "The Drake", Debtor.**

**Bankruptcy No. 79–02203K.**

United States Bankruptcy Court, E. D. Pennsylvania.

Sept. 5, 1980.

See also, Bkrtcy., 3 B.R. 340, Bkrtcy., 3 B.R. 343.

Pace Reich, Philadelphia, Pa., for debtor.

David Marston, Baldo M. Carnecchia, Jr., Philadelphia, Pa., for trustee.

Robert A. Kargen, Philadelphia, Pa., for Central Penn. Nat. Bank.

Peter M. Breitling, George B. Clothier, Philadelphia, Pa., Stephen Karotkin, Harvey R. Miller, New York City, for trustees of SE & SW Areas Pension Fund, etc.

Marc J. Sonnenfeld, John P. Kopesky, Philadelphia, Pa., for Williard Inc.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This is a case of first impression under the Bankruptcy Reform Act of 1978. ("The Code").[1]

The issue before us is whether the holder of a secured claim[2] must bear the expenses and fees incurred by the duly appointed trustee and his agents, in the performance of the trustee's duties in the event that the Chapter 11 reorganization fails.

On or about November 30, 1979, Hotel Associates, Inc., Robert B. Miller and Stanton R. Miller, a partnership trading as The Drake ("Debtor") filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. (The "Code"). At the commencement of the Chapter 11 proceedings, the trustees of the Central States, Southeast and Southwest Areas Pension Fund (The "Fund"), through their agents and allegedly pursuant to a real estate mortgage, were in possession and operating The Drake Hotel, such hotel comprising substantially all the business and assets of the debtor's estate. On or about April 11, 1980, pursuant to the Fund's motion, a trustee was appointed and duly qualified.

This court in granting the Fund's motion for the appointment of a trustee, charged the trustee with the responsibility to:

(a) Investigate the conduct and affairs of the debtor and determine the extent of the assets of the estate and the financial condition of the debtor.

(b) [Investigate] questions regarding the inadequacy of debtor's books and records and the commingling of assets of the debtor with those of affiliated companies

(c) [I]nvestigate the business operation and the desirability of its continuance.

The debtor's schedules and statement of affairs filed in the Chapter 11 proceedings indicate its present indebtedness to be $7,801,174.48. The Fund is a creditor to the extent of $5,235,735.00. The schedule of affairs indicates that if the Hotel were sold, therein yielding a return at liquidation value, the Hotel had a market value, on the date of the commencement of the Chapter 11 proceedings, of $3,600,000.

By motion, dated May 30, 1980, the trustee moved for an order directing that all expenses and costs of administration incurred by him or his agents be reimbursed, without limitation, to accomplish the task as set forth in the order of appointment. The trustee, in its present motion, does not request a specific dollar amount, but instead, seeks assurance by this court that regardless of the outcome of the debtor's proposed reorganization, the trustee's costs and expenses will be reimbursed.

---

1. This Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 752.

2. Section 506(a) of the Code abolishes the use of the terms "secured creditor" and "unsecured creditor" and substitutes in their places the terms "secured claim" and "unsecured claim". *See* S.Rep.No.989, 95th Cong., 2nd Sess. 68 (1978); H.R.Rep.No.595, 95th Cong., 1st Sess. 356 (1977); U.S.Code Cong. & Admin.News 1978, p. 5787 (1978).

Initially, the court must determine whether the Fund impliedly consented to a charge upon their secured assets, pursuant to their motion for an order appointing a trustee. The trustee argues that as a result of the Fund's motion to cause the appointment of a trustee, the Fund has caused expenses which the trustee is obligated to bear. Therefore, the secured creditor "must bear the expense of bankruptcy administration which is solely for his benefit, or to which he consents, or which he causes." *In re Louisville Storage Co.*, D.C., 21 F.Supp. 897, *aff'd* 93 F.2d 1008 (6th Cir. 1938).

The Fund rebuts the trustee's contention by arguing that a party who moves to have a trustee appointed does not thereby agree to guarantee payment of expenses of administration of the Chapter 11 case. The trustee, the Fund contends, is therefore attempting to place a substantial restriction and condition on a protective right absolutely and unconditionally afforded to all parties in interest in a Chapter 11 case. The trustee was appointed pursuant to Section 1104 of the Bankruptcy Code; such Section does not make any provision guaranteeing payment of the trustee's expenses and fees.

The controlling provision of the Bankruptcy Code is § 506(c), which provides the following:

(c) . . . trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim.

The Fund is not attempting to deny the trustee administrative expenses; presumably, they are not opposed to those costs and expenses incurred by the trustee for the benefit which the trustee and his agents has caused the debtor's primary asset: The Drake Hotel.

The Fund is vehement in its opposition to the granting of an assurance to the trustee that all administrative costs and expenses which are incurred will be honored by either the principal asset (The Drake Hotel) or though the holders of the secured claims. In essence, the Fund objects to the trustee's attempt to create a preferred status for administrative costs and expenses. Such a preferred status appears similar, the Fund argues, to a senior lien which contravenes the provisions of the Bankruptcy Code. *See John Hancock Mutual Life Insurance Co. v. Casey*, 139 F.2d 207 (1st Cir. 1943).

The legislative history accompanying § 506(c) sheds light on this novel issue, U.S.Code Cong. & Admin.News 1978, p. 6451:

Any time the trustee or debtor in possession expends money to provide for the reasonable and necessary costs and expenses the trustee or debtor in possession is entitled to recover such expenses from of [sic] preserving or disposing of a secured creditor's collateral, the secured party or from the property securing an allowed secured claim held by such party.

The import of such language indicated that the trustee is entitled to recover his administrative expenses, if the efforts of the trustee are directed towards the preservation or disposition of such property. The Fund contends that the responsibilities of the trustee, pursuant to the order issued by this court appointing the trustee, do not involve the physical preservation of the Hotel's property.

In moving for the appointment of a trustee, and a trustee charged with certain investigative duties, the Fund was clearly aware that the appointment would add to the costs and expenses of administration, and that no free assets would be available to defray such costs. The Fund is mortgagee–in–possession of the Drake Hotel, the Debtor's principal asset, sole business, and source of current funds, if any. In moving for an order appointing the trustee, the Fund called for an investigation, by the trustee, of what the Fund characterized as "gross mismanagement of the Drake's business and property prior to the time the Fund became mortgagee–in–possession . . ." See Paragraph 20 of the Fund's Motion for Order Appointing Trustee.

In its Motion, the Fund declared the proposed appointment was in the interest of creditors. That interest must include its own interest, as first mortgagee of the Debtor's principal asset. Counsel for the Fund has stated in open court that the Fund desired the appointment of a trustee in order to propose its own plan of arrangement, as provided under Bankruptcy Code § 1121(c)(2). The Fund's motion was avowedly in the Fund's interest as a holder of a secured claim, and, in so moving the court, the Fund has "invoked the aid of the Bankruptcy Court." *In re Bowen,* 46 F.Supp. 631 (E.D.Pa.1942).

Cases under the former Bankruptcy Act stressed the importance of the secured creditor's consent to a charge upon the secured assets. Early decisions of the Court of Appeals for the Third Circuit held that a secured creditor could be charged with the costs of administration to which he consented, expressly or impliedly, or which he caused. *See Miners Savings Bank of Pittston v. Joyce,* 97 F.2d 973 (3rd Cir. 1938); *Robinson v. Dickey,* 36 F.2d 147 (3rd Cir. 1930); *In re Torchia,* 188 F. 207 (3rd Cir. 1911). *Accord, First Western Savings and Loan Ass'n v. Anderson,* 252 F.2d 544, 547 (9th Cir. 1958); 6 A Collier on Bankruptcy (14th ed.), at 636–640 (1977); Seymour Rubin, "Allocation of Reorganization Expenses," 51 Yale L.J. 418, 420 (1942).

Consent was often inferred from the circumstances or from acquiescence, especially where there were no free assets for administrative expenses. *In re Street,* 184 F.2d 710 (3rd Cir. 1950); *In re Torchia, supra ; In re Edinboro Development Inc.,* 2 B.C.D. 775 (W.D.Pa.1976). See 4B Collier on Bankruptcy (14th ed.) ¶ 70.99 at 1227–1232.

*In re Torchia, supra,* involved a case where the funds available to the bankruptcy court from the liquidation of the estate were insufficient to pay more part of the judgment lien of the senior lienholder, with nothing remaining for the next four (4) judgment liens. Nevertheless, the court charged the secured creditors with commissions to the trustee and compensation of the trustee's counsel. The court found the se-

cured creditors had "ample notice" that the real estate would be sold, discharged of liens, and made no objection; and that, after the order for sale, the secured creditors did not appeal, but permitted the trustee to continue "for months in the gradual execution of the order" and in the distribution of the proceeds of the sale. The court rejected the "belated" objections of the secured creditors, and held that they had consented by "necessary implication" to the expenses for care and preservation of the real estate. 188 F.2d at 208.

In *In re Edinboro Development Inc., supra,* the debtor was originally thought to have equity in its uncompleted shopping mall. During Chapter XI proceedings, an appraisal lowered earlier estimates of the property's value. After a conversion to liquidation, the only monies available for administrative costs were net receipts from the receiver's (later trustee's) operation of the mall—which receipts were subject to the secured creditor's lien. Nevertheless, the court charged the receipts for administrative costs, finding the mortgagee had made no objection to the management of the property under court supervision, and that the facilities of the court, without which such services could not have been authorized or supervised, were "equally essential, and must be compensated" out of the net receipts. 2 B.C.D. at 777.

Here, the case is far stronger for charging the holder of the secured claim with the trustee's costs and expenses, as approved by the court, than in the cases cited. Here, the holder of the secured claim has itself moved for the appointment of a trustee, both to investigate the debtor's affairs and previous dealings, and to facilitate the Fund's own Chapter 11 plan. Here, too, moving party, clearly knew or should have known from the outset that the debtor's estate was insubstantial, apart from the secured assets.

■ The Fund not only has consented to the payment of the trustee's costs, but the Fund's own motion, bringing about the appointment of trustee, has caused the expenses that the trustee is bound to incur. A secured creditor which causes administra-

tive expenses, can and should be charged with such costs. *In re Louisville Storage Co.*, D.C., 21 F.Supp. 897, *aff'd* 93 F.2d 1008 (6th Cir. 1938).

The controlling language of § 506(c) makes no reference to either consent or causation but speaks only of costs and expenses of "preserving or disposing of" the property. Thus, it appears that the issues of consent and causation are no longer the sole primary determinants of the matter now before us. We are reluctant, however, to negate such factors totally, believing that the court, as a court of equity, must consider the many factors necessarily a part of the normal reorganization proceeding in order to do justice. Were we to rule solely upon consideration of the consent and causation arguments, the application of the trustee would now be granted in toto.

In the Opinion dated April 3, 1980, this court found that the appointment of a trustee was in the best interests of the creditors "due to the failure of the debtor to keep adequate books and records, to properly maintain the hotel while it was within its control and in order to open the possibility of other plans being presented, . . ." *In re Hotel Associates, Inc.*, 3 B.R. 343 (E.D.Pa. 1980). In describing the purposes for the appointment, the court stated:

> The trustee will have full power and authority to investigate the conduct and affairs of the debtor of the estate and the financial condition of the debtor. Questions regarding the inadequacy of debtor's books and records and the commingling of assets of the debtor with those of affiliated companies could be explored. [N.T. 77–78, 149–150]. The trustee could also investigate the business operation and the desirability of its continuance. 11 U.S.C. § 1106(a)(3). *Id.*, at 346.

In the case of *United States v. Henderson*, 274 F.2d 419 (5th Cir. 1959), *reh. den.*, a secured creditor appealed the district court's order providing that certain administrative expenses incurred as a result of an unsuccessful Chapter X reorganization were to be paid out of the assets subject to the secured creditor's mortgage. The order included a provision for payment of rent on the debtor's factory from the date of the filing of the petition for reorganization. The court in *Henderson* remanded the case to the district court for further factual determination but in so doing it stated the test to be applied as follows:

> [C]osts and expenses from which the mortgagee benefited or which might reasonably be expected to benefit the mortgagee, may in the discretion of the district court be properly charged against the mortgaged property. 274 F.2d at 423. (emphasis added)

We reiterate our earlier finding and conclude that the performance by the trustee of the investigative duties listed in our earlier Opinion can only serve to benefit the mortgagee here and is to be considered a reasonable cost of "preserving" the property.

Similarly, in the case of *First Western Savings and Loan Assoc. v. Anderson*, 252 F.2d 544 (9th Cir. 1958), the court held that administrative expenses representing services for the direct preservation and protection of mortgaged property may be charged as a *first lien* on the property. *Id.*, at 550. The court in *Anderson* cited with approval several other cases holding that the bankruptcy judge has the discretion to determine whether and to what extent mortgage creditors should be charged with the general costs of an unsuccessful reorganization proceeding. *Id.*, at 547.

Upon further application by the trustee, assuming that unencumbered assets are insufficient to pay administrative expenses, this court will face the task of balancing the "misfortune of having some allowances go unpaid against the possible inequity of charging them all against the mortgaged property," *Id.*, at 548. In making this determination, the court recognizes it will be dealing with the rights of two (2) innocent parties and necessarily must make a judgment that will require one to suffer a loss.

The court's inquiry, which is by necessity a narrow one at this stage, need proceed only so far as is necessary to assure that the cost of activities, to be performed in accord-

ance with our earlier opinion and those found to be necessary to the preservation of the Drake Hotel, will be charged to the encumbered assets, if unobtainable elsewhere.

In *Colonial Realty Investment Co.*, 516 F.2d 154 (1st Cir. 1975), the appellate court reviewed an order for costs and expenses entered prospectively, as here requested; there, "in the early stages of reorganization efforts," 516 F.2d at 160. The district court had directed the expenditure of income derived from the mortgaged properties for "expenses of administration related to these proceedings, including . . . without limitation, centrally incurred overhead, general and administrative expenses."

The secured creditor did not object to use of the rentals for "direct benefit to secured creditors," such as operating costs, taxes, maintenance, and mortgage payments, but argued the use of rental income from mortgaged properties for other purposes was contra the holding of *John Hancock Mutual Life Insurance Co. v. Casey*, 139 F.2d 207 (1st Cir. 1943) which refused to treat such income "as part of the general assets in the trustee's hands."

Considering its prior rule of *John Hancock*, and the creditor's proposal to limit use of income from secured property to "direct benefit to secured creditors," the court of appeals for the First Circuit held:

> We think there is *a tolerable middle* ground, going beyond the use of rental income for the immediate and direct benefit of several creditors, but not approaching a treatment as "general assets," which serves the rehabilitative goal of Chapter XII while respecting the property rights of the secured creditor . . . We do find suggestive the approach of *First Western Savings & Loan Association v. Anderson*, 252 F.2d 544 (9th Cir. 1958) . . . While the court describes in expansive terms the discretion of the district court to do what is "reasonable and fair," 252 F.2d at 548, it hedges that language with a list of factors to be considered by the district court, including anticipated and actual benefit resulting

to the secured creditors from the activities for which the costs are incurred. 252 F.2d at 548 n.8. [516 F.2d at 159.]

*First Western Savings, supra,* listed various factors to be considered in determining benefit to the estate.

These factors include: (1) Was there a reasonable expectation of consummating a reorganization plan which would have benefited secured creditors, thus justifying the imposition of charges against them which would not have been imposed in general bankruptcy proceedings? (2) Were the services rendered by those who have been awarded allowances intended primarily to protect the interests of unsecured creditors and the debtor, or was due regard also had for the interests of secured creditors? (3) Did those who have been awarded allowances demonstrate reasonable diligence and competence in bringing the unsuccessful reorganization proceeding to conclusion? (4) Were the secured creditors benefited by anything which was done in the reorganization proceedings? (5) Did the secured creditors request or consent to the bringing of proceedings, or consent to, or waive objection to, any of the activities of the trustee therein? (6) Were the secured creditors responsible for any delays in connection with the proceedings, or uncooperative in the attempt to formulate a successful plan?

Consideration of these factors now would be both presumptuous and premature. Pending formal application by the trustee, this court will rule on reimbursement of costs and expenses necessary to the trustee's enumerated duties and those necessary for "preserving or disposing" of the property. This court will view such costs in the "spirit of economy" found throughout bankruptcy law balancing also a liberal definition of "preserving" the property. A relaxed liberal interpretation of the work "preserving" is necessary here to negate the possibility of the trustee or his agents not being paid after having expended their valuable time in the performance of their court ordered duties.

The Bankruptcy Code newly provides, in § 331, for interim compensation for services

**114**

rendered, and necessary costs, of a trustee and professional persons employed by the trustee. Section 331 supports the policy choice made by Congress in § 330(a)(1) of the Code, that the trustee and professional persons employed under § 327 should be compensated on a comparable basis to those providing the same or similar services in non–bankruptcy cases. The trustee herein cannot, in good faith, engage attorneys and accountants to provide services, without an assurance that their reasonable fees and expenses will be compensated on an interim basis.

Where, as in the instant case, the sole asset of the debtor is heavily encumbered, and where the holder of the senior secured claim moves the court to appoint a trustee, such creditor has not only impliedly consented to the trustee's costs and expenses, but has insured that those costs and expenses will be incurred. The Fund has clearly decided to "run a risk of loss" in order to make possible a Chapter 11 plan of its own devising. *In re Riddlesburg Mining Co.*, 224 F.2d 834 (3rd Cir. 1955).

Having failed to move to lift the stay of these proceedings, and having itself moved for the appointment of the trustee, alleging the interests of creditors, including itself, the Fund has, by necessary implication, consented to the reasonable and necessary expenses of preserving the property.

Accordingly, an appropriate order will be entered.