**In re MEAT SERVICE SPECIALTIES, INC., a Corporation, Debtor.**

**Bankruptcy No. Bk–81–01069.**

United States Bankruptcy Court, W. D. Oklahoma.

Aug. 6, 1982.

Judith A. Harter, Oklahoma City, Okl., for debtor.

Jack S. Dawson and David Kaserman, Oklahoma City, Okl., for Val's Distributing Co.

W. Rogers Abbott, II, Oklahoma City, Okl., for Bob's Meat Co.

George Nelson, Oklahoma City, Okl., pro se.

## MEMORANDUM AND ORDER

DAVID KLINE, Bankruptcy Judge.

### STATEMENT

Val's Distributing Company, an unsecured creditor, objected to the secured status of Bob's Meat Company because: (1) Bob's Meat Company was an insider and as such should be subordinated to the claims of unsecured creditors; (2) Bob's Meat Company did not have a Uniform Commercial Code perfected security interest in the "proceeds" of the sale of the business to a bankruptcy court approved purchaser, B & B Meat Company.

After a full evidential hearing, the matter was taken under advisement with briefs invited.

### FACTS

1) In 1976 Meat Service Specialties, Inc. was formed by Bob Hashagen, Jim O'Steen and Tom Albertson. The company was capitalized with $30,000.00. Each person paid in $10,000.00 and took one-third of the issued stock. At the same time Meat Service Specialties, Inc. purchased from Bob's Meat Company owned by Bob Hashagen and his wife, Virginia Hashagen, all of its inventory and equipment and executed a note and security agreement to Bob's Meat Company for $110,000.00. Bob's Meat Company filed its UCC–1 on July 30, 1976 with the Oklahoma County Clerk's Office, six days after the execution of the note and security agreement.

2) Under the terms of sale and the security agreement, Meat Service Specialties was to pay Bob's Meat Company $1,337.70 per month for 10 years. Those payments were made until February of 1980. Thereafter, an additional $4,061.81 was paid to Bob's Meat Company.

3) In 1978 Tom Albertson sold his stock to Jim O'Steen and Bob Hashagen. In 1979 Jim O'Steen sold his stock to Bob Hashagen. Bob Hashagen then ran the business until his death in June of 1980. After his death his wife, Virginia, became the sole stockholder and attempted to carry on the business.

4) During the illness of Bob Hashagen the business had not been operated ideally and was in serious trouble at the time Mrs. Hashagen took over its operation.

5) On January 20, 1981 a voluntary dissolution of Meat Services Specialties, Inc. was filed in the Oklahoma County District Court numbered CJ–81–239; and on June 5, 1981 a voluntary chapter 11 petition was filed in this court.

6) After numerous hearings, a sale of Meat Services Specialties, Inc. assets was

made to B & B Meat Company for $145,-000.00; $95,000.00 to be paid in cash at the time of closing and a $50,000.00 note was taken back by Bob's Meat Company. After closing $85,000.00 was paid to the first mortgage holder, First National Bank of Bethany. Both Bob's Meat Company and First National Bank of Bethany consented to the sale and the sale was confirmed by the bankruptcy court on October 1, 1981.

7) The down payment's remainder was placed in the court registry for deposit in an interest bearing account.

8) On January 11, 1982 Val's Distributing Company filed a motion to prohibit future disbursements of funds until the secured status of Bob's Meat Company was determined.

9) On March 6, 1982 an additional $600.00 from the sale of certain debtor personalty was turned to the bankruptcy court clerk's office for safekeeping.

## CONCLUSION

■ Although under the Code definition Bob's Meat Company is an insider of the debtor [read 11 U.S.C. § 101(25)(B)] such does not call for a subordination of the rights of Bob's Meat Company to that of the unsecured creditors or in any way impair security interest's validity. The evidence in no way intimates that Meat Service Specialties was undercapitalized at its inception. Moreover, the collateral in question was the object of a properly perfected security interest [Read 12A Okla.Stat. (1979) § 9–302] and the interested parties had notice of such filing.

Distinguish the instant case where the security interest was given for valid contemporaneous consideration outside the twelve month period from *In re Fett Roofing and Sheet Metal Co., Inc.*, 438 F.Supp. 726 (E.D.Va.1977) wherein the deeds of trust were filed within the one year avoidance period of an undercapitalized company and where the deeds of trust were backdated in an unsuccessful effort to show contemporaneity.

■ The significance of the insider definition is to invite inquiry to determine if such person "is one who has sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor". Legislative History, p. 21, *1979 Collier Pamphlet Edition, Part 3 Bankruptcy Code*, Matthew Bender, New York. Thus, an insider's transactions may be suspect but there must be a showing of wrongdoing or a taking of unfair advantage to call for subordination. See 11 U.S.C. § 547.

Here, Mr. Hashagen ran a successful business until illness forced him to leave his operation to others. In 1976 he in no way exploited his position as an insider. Moreover, Bob's Meat Company's presently asserted secured claim is unaffected by its failure to include "proceeds" as set forth in 12A Okla.Stat. (1979) § 9–306(4). This court in ordering and approving the sale, did so with the express understanding that such would be without prejudice to all existing and assertable rights in and to the sold property.

■ The court may and should pay administrative costs from the proceeds of sale, or from secured property, where the action of the debtor-in-possession and its counsel have protected and preserved the rights of said secured creditor. Cf. *In re Hotel Associates, Inc.*, 6 B.C.D. 939, 6 B.R. 108 (Bkrtcy. E.D.Pa.1980). Distinguish *In re Codesco, Inc.*, 8 B.C.D. 1089, 18 B.R. 225 (Bkrtcy.S.D. N.Y.1982). Read 11 U.S.C. § 1107(a); 11 U.S.C. § 506(c); cf. 11 U.S.C. § 103(a). See in particular 124 Cong.Rec. H 11,095 (Sept. 28, 1978); Sen 17,411 (Oct. 6, 1978). Specifically, the action of the debtor-in-possession through its counsel resulted in a sale in place of the collateral of secured claimant Bob's Meat Company, absent which Bob's Meat Company would have received nothing from the sale in question inasmuch as it was subrogated to The First National Bank of Bethany.

## ORDER

Accordingly, it is hereby ORDERED and ADJUDGED:

1) Bob's Meat Company has a valid, secured interest in all proceeds of the sale of Meat Service Specialties, Inc.

2) The debtor-in-possession's claim on behalf of counsel is approved to the extent such benefitted secured claimant Bob's Meat Company and it is directed that Judith A. Harter, acting as the successor attorney for the debtor-in-possession, be awarded the sum of $3,177.00 from the funds presently in the court registry; and that George Nelson, the original attorney for the debtor-in-possession, be awarded the sum of $2,479.16 from the funds presently in the court registry.

3) All remaining funds and interests go to secured claimant Bob's Meat Company.