UNITED STATES of America,
Appellant,

v.

James C. HENDERSON, Trustee in Bankruptcy of Southwest Casket and Manufacturing Company, Inc., et al., Appellees.

No. 17680.

United States Court of Appeals
Fifth Circuit.

Dec. 29, 1959.

Rehearing Denied Feb. 11, 1960.

**420**

Morton Hollander and Hershel Shanks, Attys., Dept. of Justice, Washington, D. C., William M. Steger, U. S. Atty., John L. Burke, Jr., Asst. U. S. Atty., Tyler, Tex., George Cochran Doub, Asst. Atty. Gen., Washington, D. C., for appellant.

William Hurwitz, L. F. Burke, H. P. Smead, Longview, Tex., for appellees.

Before RIVES, Chief Judge, and HUTCHESON and TUTTLE, Circuit Judges.

RIVES, Chief Judge.

This is an appeal by the United States on behalf of the Small Business Administration (S.B.A.), a secured creditor[1] of Southwest Casket and Manufacturing Company, Inc., the debtor in an unsuccessful corporate reorganization proceeding. The appeal is taken from that portion of the district court's order which provides that certain administrative expenses incurred as a result of the attempted reorganization are to be paid out of assets subject to the S.B.A. mortgage "in the event the proceeds or the unencumbered assets are not sufficient to pay the claims." The expenses in question, which total $7,378.84, as itemized in the margin,[2] relate to the period between November 18, 1957, when the trial court entered an order under Section 141[3] of the Bankruptcy Act, approving a voluntary petition filed by the debtor under Section 126[4] of the Act, and March 4, 1958, when the reorganization proceeding was terminated by an order under Section 236[5] of the Act adjudicating the debtor a bankrupt.

Appellees offer two separate theories upon either of which they contend the order under attack must be upheld. First, they contend that the S.B.A. has by its actions during the course of the attempted reorganization acquiesced in and actively encouraged the proceedings to such an extent as to amount to an implied consent on its part to the incurring of the expenses here involved. Secondly, they contend that the expenses were incurred for the preservation and benefit of the mortgaged property, and

---

1. With a mortgage on nearly all of the tangible assets.

2.
1. Rent on the debtor's factory at Gladewater, Texas from the date of the filing of the petition for reorganization .............. $ 630.00
2. Rent on the debtor's factory at Longview, Texas from the date of the filing of the petition for reorganization .................... $ 1,155.00
3. Premiums for workmen's compensation insurance and public liability insurance for the period during which the debtor was operated by the trustee in reorganization .......... $ 93.84
4. Compensation for the services of the trustee in reorganization .......... $ 3,000.00
5. Compensation for the services of the attorney for the trustee in reorganization .................... $ 2,000.00
6. Compensation for the services of the attorney for the debtor .............. $ 500.00

Total ............ $ 7,378.84

3. 11 U.S.C.A. § 541.

4. 11 U.S.C.A. § 526.

5. 11 U.S.C.A. § 636.

therefore such expenses can properly be charged to that property even in the absence of consent on the part of the secured creditor.[6]

To support the consent theory, appellees rely upon two facts: first, that the S.B.A. took no action to oppose the reorganization proceedings until February 28, 1958, when it finally appeared specially for the purpose of filing a petition praying for an order dismissing the proceedings and for permission to proceed to foreclose its liens against the debtor's property; and, secondly, that, during the early stages of the attempt at reorganization, the S.B.A. told the trustee that it might consider making an additional loan to the debtor if the participation of some banking institution in the county could be obtained.

■ As we view these facts, they are wholly insufficient to warrant a finding of consent.[7] The argument that the failure of a secured creditor to actively oppose reorganization proceedings implies a consent that the costs of the proceedings may be charged against property subject to its mortgage was rejected in In re Freeport Standard Dairy Corporation.[8] A distinction must be drawn between acts which evidence consent to bear the costs of reorganization proceedings and acts which merely evidence a willingness that such proceedings be conducted if others want them and if others bear the cost. Under the circumstances of the present case, the only inference which can be drawn from a failure to intervene and actively oppose reorganization is the inference of willingness to let those who desire and are willing to pay for the proceedings do so.[9] We think it clear that the failure of the S.B.A. to take positive action prior to February 28, 1958, cannot constitute evidence of its consent to these charges upon its security.[10]

■ Nor can the fact that the S.B.A. did not absolutely refuse to consider making a further loan to the debtor constitute such evidence. The testimony shows merely that upon inquiry by the trustee, the S.B.A. stated that a loan might be considered if a banking institution could be found which was willing to participate. We cannot see that this innocuous, noncommittal statement could legitimately be interpreted to evidence consent to the charges here involved.

■ Appellees present a third contention that the charges were proper even in the absence of consent because they relate to costs incurred for the preservation and benefit of the mortgaged property. In support of this contention, they point to the district court's finding,

"* * * that each and all of the services rendered and expenses incurred, allowance for which have hereinabove been made, were necessary for the proper conduct of these proceedings and the preservation of the assets, including encumbered assets, of the Debtor Corporation during the pendency of these pro-

---

6. That was the rule of decision rested upon historical principles of equity which applied in ordinary bankruptcy proceedings and in those under former Section 77B. See Miners Savings Bank of Pittston, Pa. v. Joyce, 3 Cir., 1938, 97 F.2d 973; Oakland Hotel Co. v. Crocker First Nat. Bank, 9 Cir., 1936, 85 F.2d 959. Our decision in Florida National Bank v. United States, 5 Cir., 1937, 87 F.2d 896, is not to the contrary. See 6 Collier on Bankruptcy, para. 13.14, p. 4578; II Remington on Bankruptcy § 908.

7. In this respect, we are apparently in agreement with the learned trial judge as evidenced by the fact that no such finding was made.

8. 7 Cir., 1941, 124 F.2d 783, 784.

9. Compare In re Riddlesburg Mining Co., 3 Cir., 1955, 224 F.2d 834, 837, where the delay and expense occasioned by active opposition to the proceedings on the part of the secured creditors and by a spurious excessive claim of one of them were relied upon as factors justifying the imposition of administration expenses upon mortgaged property.

10. The case is distinguishable from In re Torchia, 3 Cir., 1911, 188 F. 207, where the proceedings passively permitted were inconsisent with the claim of security.

ceedings, and that such expenses incurred and fees allowed hereinabove should be and they are hereby declared to be proper costs of the administration of the Debtor's estate during the pendency of these reorganization proceedings and are hereby assessed against the entire property and assets of the Debtor Corporation."

The appellees contend that this is a finding by the district court that all of the charges here in question relate to costs incurred for the preservation of the mortgaged property. We do not agree. On the surface, the finding is ambiguous in that it is not clear whether the costs are being related entirely to the preservation of assets, or only partly to that purpose and partly to the conduct of the reorganization proceedings. When the finding is considered in the light of the entire record, however, this apparent ambiguity disappears. The testimony in the record is clear that the bulk of the activities of the trustee and his attorney which form the basis of their claims was directed toward exploring the possibilities for reorganization, rather than toward preserving the assets of the debtor. Similarly, the other costs here involved seem clearly to arise, either in whole or in large part, out of activities directed toward that broader aim.[11] The quoted finding must, therefore, be interpreted to relate the costs involved partly to the preservation of assets and partly to the conduct of the reorganization proceedings, for the alternative interpretation would leave it without any support in the record and necessitate its rejection as clearly erroneous.

■ Generally speaking, a Chapter X proceeding may affect the rights of all creditors, secured and unsecured, while ordinary bankruptcy usually affects only the rights of unsecured creditors. The preservation of the going-concern value through reorganization may benefit secured creditors in varying degrees, sometimes as much as or even more than unsecured creditors, especially when, as here, the value of the security on most of the tangible assets at liquidation price is less than the amount of the debt. See Rubin "Allocation of Reorganization Expenses," 51 Yale Law Journal 418, 427, 428. Upon some such reasoning, it has been suggested that all assets in a Chapter X proceeding should be considered as analogous to free assets in straight bankruptcy. Id. p. 420.

■■ The payment of costs and expenses incurred in an abortive Chapter X proceeding is provided for in Section 246 of the Bankruptcy Act, 11 U.S.C.A. § 646, as follows:

"Upon the dismissal of a proceeding under this chapter, or the entry of an order adjudging the debtor a bankrupt, the judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in such proceeding prior to such dismissal or order of adjudication by any persons entitled thereto, as provided in this chapter, and shall make provision for the payment thereof, and for the payment of all proper costs and expenses incurred by officers in such proceedings."

Former Section 77B had no similar provision. There seems to be some difference among the circuits as to whether the enactment of Section 246 operated to modify the rule developed by the courts under former Section 77B.[12] See In re Freeport Standard Dairy Corpora-

11. This would appear to be true even of the claims for rental on the premises where the debtor's assets were located. Insofar as these premises provided a storage place for those assets, they were necessary to preservation. It seems clear, however, that the nature of the premises leased was dictated, not by the requirements of storage, but, rather, by the requirements of continued operation in the interest of reorganization. Thus, only a part, and probably a small part, of the rental claims can properly be related to the preservation of assets.

12. For that rule, see footnote 6, supra, and 6 Collier on Bankruptcy, 14th ed., Sec. 13.14[2], p. 4575.

tion, 7 Cir., 1941, 124 F.2d 783, 785; In re Franklin Garden Apartments, 2 Cir., 1941, 124 F.2d 451, 454; In re Riddlesburg Mining Co., 3 Cir., 1955, 224 F.2d 834, 837; First Western Savings & Loan Ass'n v. Anderson, 9 Cir., 1958, 252 F.2d 544, 548. From a reading of these and other cases and from the legislative history of Section 246,[13] we conclude that Section 246 sought to rectify a rule which denied adequate compensation to committees and their counsel, and that it did modify the former rule but only to an extent which might properly have been developed by the courts themselves; that is, that costs and expenses from which the mortgagee benefited or which might reasonably be expected to benefit the mortgagee, may in the discretion of the district court be properly charged against the mortgaged property. See also, Silver State Savings & Loan Association v. Young, 9 Cir., 1958, 252 F.2d 236, 239.[14]

■ We cannot determine from the record what part of the costs and expenses involved meets this test, and the discretion to be exercised is that of the district court. The cause must therefore be reversed and remanded, unless any change effectuated by Section 246 is inapplicable to the United States under an alternative theory presented by S.B.A.

■ The appellant argues that general provisions of the Bankruptcy Act do not apply to the United States unless it is specifically mentioned.[15] We do not have the help of any reply to that argu-

13. Especially the following from the report of the National Bankruptcy Conference to the House Committee on the Judiciary dealing with an amendment to Section 77B, the substance of which was adopted as Section 246.

"We have built up the provisions to make it clear that allowances may be made for services rendered or disbursements incurred in a proceeding under this subsection, even though the plan may not be confirmed, but a liquidation directed or the proceeding dismissed. Such compensation and reimbursement should not of course be made to depend upon the contingency of a confirmation. If it is to be expected that responsible parties are to render effective service in a reorganization proceeding, provision must be made for reasonable compensation to them, regardless of the outcome of the proceedings. To do otherwise may invite into the proceedings less efficient and responsible persons."

Analysis by National Bankruptcy Conference of H.R. 12889, 74th Cong., 2d Sess. (1936), c. 3, § 12(II) (d) (7).

14. In First Western Savings and Loan Ass'n v. Anderson, 9 Cir., 1958, 252 F.2d 544, 548, n. 8, it was said:

"Among the factors to be considered in making this determination: (1) Was there a reasonable expectation of consummating a reorganization plan which would have benefited secured creditors, thus justifying the imposition of charges against them which could not have been imposed in general bankruptcy proceedings? (2) Were the services rendered by those who have been awarded al-

lowances intended primarily to protect the interests of unsecured creditors and the debtor, or was due regard also had for the interests of secured creditors? (3) Did those who have been awarded allowances demonstrate reasonable diligence and competence in bringing the unsuccessful reorganization proceedings to conclusion? (4) Were the secured creditors benefited by anything which was done in the reorgainzation proceedings? (5) Did the secured creditors request or consent to the bringing of the proceedings, or consent to, or waive objection to, any of the activities of the trustee therein? (6) Were the secured creditors responsible for any delays in connection with the proceedings, or uncooperative in the attempt to formulate an acceptable plan?"

15. In support of that proposition, the appellant cites: Guarantee Title & Trust Co. v. Title Guaranty Co., 1912, 224 U.S. 152, 155, 32 S.Ct. 457, 56 L.Ed. 706; Lewis v. United States, 1875, 92 U.S. 618, 622, 23 L.Ed. 513; United States v. Herron, 1873, 20 Wall. 251, 260–264, 22 L.Ed. 275; Sampsell v. United States, 9 Cir., 1952, 205 F.2d 490; Villere v. United States, 5 Cir., 1927, 18 F.2d 409, 53 A.L.R. 571; In re J. Menist Co., 2 Cir., 1923, 294 F. 532; United States v. Birmingham Trust & Savings Co., 5 Cir., 1919, 258 F. 562; United States v. Wittek, 1949, 337 U.S. 346, 359, 69 S.Ct. 1108, 93 L.Ed. 1406; United States v. United Mine Workers, 1947, 330 U.S. 258, 272, 67 S.Ct. 677, 91 L.Ed. 884.

ment on the part of the appellees. Our independent consideration of it leaves us unimpressed. The treatment generally of the United States as a creditor in Chapter X proceedings is provided for in Section 199, 11 U.S.C.A. § 599.[16] Under that section, if the proceedings had been successful, costs and expenses could have been charged against the security of the United States, the same as against that of any other secured creditor. When reorganization proceedings under former Section 77B failed, there was no holding that the court-developed rule was not applicable to the United States the same as any other creditor. We cannot conceive that Congress intended the incongruous result of a continuation of the old rule when the United States is the secured creditor and its modification to the extent that has been indicated when the secured creditor is a private person.[17]

The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

On Application for Rehearing.

PER CURIAM.

In our original opinion we undertook to state the test of the costs and expenses under Section 246 of the Bankruptcy Act, 11 U.S.C.A. § 646, which the district court might in its discretion charge against the mortgaged property as follows:

"* * * costs and expenses from which the mortgagee benefited or which might reasonably be expected to benefit the mortgagee, may in the discretion of the district court be properly charged against the mortgaged property."

The judgment was reversed and the cause remanded for the reason stated in the opinion, viz., "We cannot determine from the record what part of the costs and expenses involved meets this test, and the discretion to be exercised is that of the district court."

Other parts of our opinion, notably footnote 11 and the text to which it is appended, can be construed as an attempt on our part to direct or influence the district court in the exercise of its discretion, or in finding certain facts to which the test prescribed might or might not apply. We expressly disavow any such intention. Finding the facts and exercising the discretion as to charging costs and expenses against the mortgaged property under the applicable legal test become the primary responsibility of the district court unaffected in any way by the language of our opinion.

With this modification of the opinion, the application of the landlord, John Petty, for a rehearing is

Denied.

16. "If the United States is a secured or unsecured creditor or stockholder of a debtor, the claims or stock thereof shall be deemed to be affected by a plan under this chapter, and the Secretary of the Treasury is hereby authorized to accept or reject a plan in respect of the claims or stock of the United States. If, in any proceeding under this chapter, the United States is a secured or unsecured creditor on claims for taxes or customs duties (whether or not the United States has any other interest in, or claim against the debtor, as secured or unsecured creditor or stockholder), no plan which does not provide for the payment thereof shall be confirmed by the judge except upon the acceptance of a lesser amount by the Secretary of the Treasury certified to the court: *Provided,* That if the Secretary of the Treasury shall fail to accept or reject a plan for more than ninety days after receipt of written notice so to do from the court to which the plan has been proposed, accompanied by a certified copy of the plan, his consent shall be conclusively presumed." 11 U.S.C.A. § 599.

17. In this case, the Small Business Administration purchased the note and mortgage from the Longview National Bank of Longview, Texas, and thus succeeded to the rights of that bank.