In re WORLD OF ENGLISH, N. V., Debtor.

In re COMMUNICATION & STUDIES INTERNATIONAL, LTD., Debtor.

COMMUNICATION & STUDIES INTERNATIONAL, LTD. and World of English, N. V., Plaintiffs,

v.

BANK OF AMERICA, N. T. & S. A., Defendant.

Bankruptcy Nos. 81–02822A, 81–02823A. Adv. No. 81–1282A.

United States Bankruptcy Court, N. D. Georgia.

June 22, 1982.

David G. Bisbee and Robert A. Parker, Jr., Bisbee & Parker, and Dale M. Schwartz, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for plaintiffs.

Robert W. Patrick, Jeffrey L. Raney, Karen Wildau, Jesse H. Austin, III, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendant.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the plaintiffs' motion for summary judgment concerning Count IV of their Complaint to Avoid Post-Petition Effect of Alleged Security Interest; to Recover Preferential Transfer; and to Recover Costs and Expenses of the Preservation and Disposition of Property. The debtors, Communication & Studies International, Ltd. ("C&S") and World of English, N. V. ("WOE"), seek to recover the costs of providing support services for the Actual Living English membership contracts ("ALE contracts") owned by C&S and support services for the World Family membership program contracts "WF contracts") owned by WOE, in which the defendant, Bank of America, N. T. & S. A. ("BOA"), claims a lien and security interest. The debtors seek to recover the costs of providing the ALE and WF services (hereinafter sometimes referred to as "ALE services")[1] under the provisions of 11 U.S.C. § 506(c). A brief recitation of the background of these cases will follow, after which the Court will address the specific legal issues raised by the parties.

C&S and WOE are part of "a group of interlocking corporations." Order of April 16, 1981, at p. 1. On March 20, 1981, International Horizons, Inc. ("IHI"), International Horizons (Curacao), N. V. ("IHCNV"), North American Exports, Inc. ("NAE"), and International Horizons, N. V. ("IHNV"), filed their respective petitions under Chapter 11 of the United States Bankruptcy Code. C&S and WOE filed for relief under Chapter 11 of the Bankruptcy Code on July 7, 1981. On January 27, 1982, this Court denied a motion by BOA to dismiss the Chapter 11 petitions of WOE and C&S, finding that the requirements of 11 U.S.C. § 109 had been met in that the debtors had property in the United States and that venue was proper in the Northern District of Georgia because both WOE and C&S, as 100% owned subsidiaries of IHI, are affiliates of a debtor that is properly before this Court. (28 U.S.C. § 1472). The International Horizons Group, in conjunction with their sale of Pro-English Learning Systems product ("PELS") to Japanese consumers, also sell a post-purchase service

---

1. These ALE services include: (1) English conversation classes in ten cities throughout Japan; (2) telephone English services in ten cities throughout Japan which enable the members to practice conversational English or obtain help with a lesson; (3) information service in English; (4) U.S.A. study counseling services which aid members who wish to study in the United States; (5) the ALE News, which is a quarterly newsletter designed to encourage use of Pro-English Learning System and ALE; (6) the audio annual; (7) audio annual testing services; (8) Pro-English Learning System study guide tape testing services; (9) ALE seminars, which are conducted ten or more times per year under which members may travel to English-speaking countries and participate in English language study programs taught by English language teachers from major universities in those countries; (10) individual trip services, which provide passport and visa aid as well as discounts with certain travel agencies; (11) the ALE help line, which is a toll free telephone service in the United States; and (12) discounts with hotels, shops and car rental agencies. November 2, 1981 affidavit of Herbert W. Scheidel, April 8, 1982 affidavit of Kyoshi Fukui.

known as the Actual Living English membership program ("ALE"). The International Horizons group also sells a post-purchase service known as the World Family membership program ("WF") in conjunction with their sale of Disney's World of English product ("DWE"). Since February 1, 1981, ALE memberships have been sold on behalf of International Resources, K. K. ("IRKK"), presently a debtor before this Court, with respect to wholesale PELS sales. All WF contracts are sold on behalf of IRKK. Presently, pursuant to Order of this Court, the debtors receive 17–20% of receipts from ALE and WF accounts to cover their costs of collection of these accounts. See *In re International Horizons, Inc., et al.*, Case Nos. 81–01231A, *et seq.* March 30, 1981, Order. The debtors also provide ALE services with regard to the ALE and WF contracts. In this action, the debtors are seeking to recover costs of providing these ALE services.

BOA has raised an initial question concerning the law of which country is to be applied in this proceeding. BOA contends that Japanese law should be applied in the instant case because neither C&S nor WOE are United States corporations and the business activities that are the subject of this Order are conducted primarily in Japan. This Court has found previously that the debtors are "a group of interlocking corporations" and that due to the interrelationship between the debtors and their affiliates, any action which affects an affiliate or an individual debtor would affect this reorganization proceeding. Order of April 16, 1981, at 1; Order of January 6, 1982, at 3; Order of January 27, 1982, at 7. While the interrelationship between the debtors does not mandate the application of United States law in this proceeding, there are cogent reasons why this should be the case.

BOA bases its claim of a security interest in the ALE and WF contracts on the January 12, 1979, Loan Agreement entered into by IHNV, WOE, C&S, United Resources, K. K. ("URKK"), International Computer and Distribution Services, K. K. ("ICDSKK"), and BOA. Paragraph 1.3 of the Loan Agreement contemplates the necessity of using Japanese law to determine how to obtain a valid security interest in the ALE contracts and WF contracts. Paragraph 9.9 of the Loan Agreement states that:

"This agreement and any note or other instrument or agreement required hereunder shall be governed by and construed under the laws of the State of California to whose jurisdiction the parties hereto do hereby submit. In addition, Bank (BOA) may proceed against the collateral in any jurisdiction which Bank deems to be appropriate, to whose jurisdiction the parties hereto do hereby submit."

While the loan agreement contemplates the use of Japanese law concerning the perfection of security interests, the parties clearly agreed to interpret the loan agreement, and therefore their mutual rights and obligations, under the laws of the State of California. To the extent that California law is subordinated to United States federal law, the parties have submitted to the jurisdiction of the United States courts. This Court finds that the reasonable expectations of the parties, extrapolated from paragraph 9.9 of the loan agreement, includes the use of United States federal law concerning issues which may have arisen from time to time between the parties to the loan agreement. The cases on extra-territorial application of United States law, cited by BOA in its March 30, 1982, Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment, are distinguishable from the instant case on this basis. Therefore, this Court finds that it is proper to employ United States bankruptcy law in this adversary proceeding.

The overriding issue in the case *sub judice* is whether and to what extent the provisions of 11 U.S.C. § 506(c) will enable the debtors to recover the costs of providing ALE services. Section 506(c) of the Bankruptcy Code states that:

"The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such prop-

erty to the extent of any benefit to the holder of such claim."

This section was intended to codify pre-Code law. H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977) 357; S.Rep.No.95–989, 95th Cong., 2d Sess. (1978) 68, U.S.Code Cong. & Admin.News 1978, 5787. The cases on this subject prior to 1979, when the current Bankruptcy Code became effective, have gone through an evolution.

The case of *First Western Savings & Loan Association v. Anderson*, 252 F.2d 544 (9th Cir. 1958), on which BOA places great reliance, sets forth certain factors that should be considered by the Bankruptcy Court in assessing administrative expenses against secured creditors in an aborted reorganization proceeding.[2] These factors are not necessarily prerequisite to the allowance of expenses of preservation of property under § 506(c) of the Bankruptcy Code, but instead constitute circumstances which may have a bearing on such an allowance. It should also be noted that *First Western* is distinguishable from the instant case in that the reorganization proceeding in that case was not successful, whereas in the instant cases the reorganization proceeding is ongoing and the debtors have shown continued viability. The final determination in *First Western* was that assessment of costs against secured property would only be allowed to the extent that these costs were incurred "for the direct preservation and protection of the mortgaged property..." *First Western*, 252 F.2d at 550. In *United States v. Henderson*, 274 F.2d 419 (5th Cir. 1960), the Court held that consent was not required for the assessment of costs and expenses against a secured creditor's interest to the extent to which that interest is

benefited. The Fifth Circuit Court of Appeals' exact language was:

"that costs and expenses from which the mortgage benefited *or which might reasonably be expected to benefit the mortgagee*, may in the discretion of the district court be properly charged against the mortgaged property." [emphasis added]. *Henderson*, 274 F.2d at 423.

It is apparent that the Court in *Henderson* sanctioned the assessment of costs of preservation or disposition of a secured creditor's collateral to the extent that these expenses benefited said secured creditor; and, in fact, the Court contemplated this assessment in the situation in which a reorganization was ongoing and had not been aborted, as it was in *Henderson*. Finally, in *In the Matter of Colonial Realty Investments Company, et al.*, 516 F.2d 154 (1st Cir. 1975), the Court recognized that the secured creditor's interest may be assessed even where there is not necessarily a clear, direct benefit to said secured creditor. The middle ground between "treatment as 'general assets' ", *Colonial Realty*, 516 F.2d at 159, and "direct benefit" allows an assessment which serves the rehabilitative goals of a bankruptcy proceeding. *Id.* at 159.

*First Western, Henderson,* and *First Colonial, supra,* all recognize a balancing test which this Court must undertake in determining whether to assess the expenses of preservation or disposition of collateral. The progression that these three cases evidence is one of providing a liberal interpretation to the determination of what constitutes the preservation of property in which a secured creditor has an interest. It seems to this Court that merely keeping a debtor in operation may constitute preservation of property.

2. (1) Was there a reasonable expectation of consummating a reorganization plan which would have benefited secured creditors, thus justifying the imposition of charges against them which could not have been imposed in general bankruptcy proceedings? (2) Were the services rendered by those who have been awarded allowances intended primarily to protect the interest of unsecured creditors and the debtor, or was due regard also had for the interest of secured creditors? (3) Do those who have been awarded allowances demonstrate reasonable diligence and competence in bringing the unsuccessful reorganization proceedings to conclusion? (4) Were the secured creditors benefited by anything which was done in the reorganization proceedings? (5) Do the secured creditors request or consent to the bringing of the proceedings, or consent to, or waive objection to, any of the activities of the trustee therein? (6) Were the secured creditors responsible for any delays in connection with the proceedings, or uncooperative in the attempt to formulate an acceptable plan?

In the instant case, this Court has previously found that the value of the security now held by BOA is directly related to the going concern value of the debtors' business. *In re International Horizons, Inc., et al.*, Case Nos. 81–01231A, *et seq.*, Order of May 1, 1981, at p. 5; *In re International Horizons, Inc., et al.*, Case Nos. 81–01231A, *et seq.*, Order of May 21, 1981, at p. 11. The debtors have shown that if ALE services were not performed, the ALE and WF accounts would become uncollectible and virtually valueless. See November 2, 1981, affidavit of Herbert W. Scheidel, paragraph 10. The ALE and WF contracts require the performance of certain services to Japanese ALE and WF customers. The failure to provide these services would result in a default in performance of consumer contracts by the debtors, which default would in turn dissipate the value of both the ALE contract and the going concern value of the debtors' businesses. See the February 2, 1982, affidavit of Herbert W. Scheidel and *In re International Horizons, Inc., et al.*, Case Nos. 81–01231A, *et seq.* Order of May 21, 1981, at p. 11. This Court is of the opinion that the benefit which BOA receives through the performance of ALE services is sufficiently direct to support an allowance of administrative expenses assessed against the ALE and WF contracts and their proceeds under the authority of *United States v. Colonial Investments Company, et al.*, 516 F.2d 154 (1st Cir. 1975). The recent case of *In re Codesco, Inc.*, 18 B.R. 225 (Bkrtcy.S.D.N.Y.1982) is distinguishable from the case *sub judice* in that the Court therein found that any benefit which may have inured to the secured creditor was "too indefinite and remote to support an allowance..." *Id.* at 229.

BOA also contends that a § 506(c) analysis is inappropriate in the instant case because its claim has yet to be allowed. See March 30, 1982 Bank of America, N. T. & S. A. Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment at p. 27. While it is true that § 506(c) of the Bankruptcy Code contemplates recovery from property "securing an allowed secured claim," were this Court at some later time to disallow BOA's claim, there would be no limitation on the use of the ALE and WF contracts in which BOA claims a security interest, because in order to have a secured claim, a claim must be allowed. 11 U.S.C. § 506. Accordingly, this contention has no bearing on the determination of the issues presently before the Court.

The next question which this Court must address is the extent to which summary judgment is appropriate in this case concerning the issues of the actual costs of providing ALE services and the reasonableness and necessity of those actual costs. The Court believes that there are genuine issues of material fact concerning these questions. Accordingly, the plaintiffs' Motion for Summary Judgment is denied as to these questions.

Therefore, the plaintiffs' Motion for Summary Judgment is granted in part, the Court finding that the plaintiffs are entitled, as a matter of law, to recover the actual, reasonable and necessary costs and expenses of preservation of the value of the ALE contracts pursuant to 11 U.S.C. § 506(c). The plaintiffs' Motion for Summary Judgment is denied in part, with the Court directing that an evidentiary hearing on the issues of the actual costs of providing ALE services and the reasonableness and necessity of these costs be held on July 20, 1982, at 10:30 A. M., in Room 520, United States Court of Appeals Courthouse, 56 Forsyth Street, N. W., Atlanta, Georgia.

IT IS SO ORDERED.