**In re KORUPP ASSOCIATES, INC.**
**d/b/a Dresden Inn, Debtor.**

**Bankruptcy Nos. 181–00204, C11–21207.**

United States Bankruptcy Court,
D. Maine.

June 8, 1983.

---

Robert Keach, Verrill & Dana, Portland, Me., for debtor.

Peter Greenleaf, Portland, Me., Asst. U.S. Trustee.

Harlan Choate, Augusta, Me., for Small Business Admin.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

The debtor filed, on December 3, 1982, an application for an order assessing certain costs of administration against two of its secured creditors, the United States Small Business Administration (SBA) and Casco Bank & Trust Company (Casco). The debtor alleges that $18,012.42 is owing in administrative fees and expenses and that this amount is recoverable from the secured parties pursuant to 11 U.S.C. section 506(c). There are no assets left in the estate with which to pay these costs; therefore, unless recovery from the secured parties is allowed, these fees and expenses will not be paid. A hearing was held on March 4, 1983 and the parties have filed briefs.[1]

1. Casco has not responded to the debtor's application and neither appeared at the hearing nor filed a brief. However, the result reached herein is applicable to both secured parties.

Some background information is necessary to discuss the issue presented. The debtor filed a chapter 11 petition in bankruptcy on June 29, 1981.[2] Its major asset was the Dresden Inn, an inn and restaurant located in Dresden, Maine. The filing was precipitated by seizure of the debtor's property, including the Inn, by the United States Internal Revenue Service (IRS). Immediately upon filing, the debtor initiated a turnover proceeding against the IRS to regain possession of the Inn. The SBA and Casco were given notice of the proceeding but were not included as parties. By a consent order entered July 2, 1981, the debtor regained possession of its property and recommenced business operations at the Inn.

From Fall of 1981 through Spring of 1982, the debtor unsuccessfully attempted to market the property. On June 9, 1982, the debtor filed an application for authority to enter into a non-exclusive listing agreement with Mainco Realty, Inc. The SBA responded with an objection and a request for conversion of the case to a chapter 7. Shortly thereafter, Casco filed a similar objection and request for conversion. The debtor opposed conversion and, by stipulation, the parties agreed that the debtor would sell the property at public auction and the SBA and Casco would withdraw their requests for conversion. The stipulation was incorporated in an "Application to Compromise Controversy" filed by the debtor and allowed by the Court on October 13, 1982. The property was sold at public auction for $92,000. Casco was paid in full on its secured claim; the SBA was paid in part and left with a deficiency of $99,619.61.[3]

On December 21, 1982, pursuant to a motion by the U.S. Trustee, the case was converted to a chapter 7 proceeding. The issue now presented is whether the secured parties may be required to pay any of the unpaid costs of administration incurred during the pendency of the chapter 11 proceeding.[4]

■ Ordinarily, the estate bears the burden of costs of administration and attorney fees for services rendered to the debtor in possession. Under certain circumstances, these costs may be shared with secured parties. Section 506(c) of the Bankruptcy Code provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). This section allows costs to be charged against a secured party "for acts which directly protect or preserve the collateral in a specific and limited sense." *Sells v. Sonoma V. (In re Sonoma V.),* 24 B.R. 600, 603, 10 B.C.D. 63, 65 (Bkrtcy. 9th Cir.1982). The burden of proving that section 506(c) applies to the costs for which recovery is sought is on the debtor. *See In re Trim-X, Inc.,* 695 F.2d 296, 299 (7th Cir.1982).

The legislative history accompanying section 506(c) indicates that this section "codifies current law," H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, and allows for recovery of expenses from a secured party "[a]ny time the ... debtor in possession expends money to provide for the

---

**2.** Upon filing its petition, the debtor became a debtor in possession under 11 U.S.C. section 1101. The debtor in possession has all the rights and powers, and is to perform all the functions and duties (subject to the limitations set forth in 11 U.S.C. section 1107) of a trustee serving in a case under chapter 11.

**3.** A portion of this deficiency has since been paid pursuant to the consent order entered March 16, 1983 from proceeds held in escrow by Keenan Auction Company.

**4.** All fees and expenses of the sale of the property at public auction, including the debtor's counsel's approved fees and expenses directly attributable to obtaining court authorization for the sale and the closing of the sale, have already been paid from the proceeds of the sale and therefore are not included in the request for payment of administrative fees and expenses here discussed.

reasonable and necessary costs and expenses of preserving or disposing of a secured creditor's collateral. . . ." 124 Cong. Rec. H11095 (daily ed. Sept. 28, 1978), *reprinted in* 3 app. *Collier on Bankruptcy,* IX–98 (15th ed. 1982); 124 Cong.Rec. S17411 (daily ed. Oct. 6, 1978), *reprinted in* 3 app. *Collier on Bankruptcy,* X–24 (15th ed. 1982). The congressional reports prevent too expansive a reading of this provision by specifically noting that "*recovery is limited to the extent of any benefit* to the holder of such [secured] claim." H.R.Rep. No. 595 at 357; S.Rep. No. 989 at 68 (emphasis added), U.S.Code Cong. & Admin. News 1978, pp. 5854, 6313.

▊ Since the Code provision is a codification of pre-Code law, cases decided under the former Bankruptcy Act are still applicable to a determination of rights under section 506(c). *See Communication & Studies International, Ltd. v. Bank of America, N.T. & S.A. (In re World of English, N.V.),* 21 B.R. 524, 527 (Bkrtcy.N.D.Ga. 1982); *Sells v. Sonoma V. (In re Sonoma V.); In re Codesco Inc.,* 18 B.R. 225, 228, 8 B.C.D. 1089, 6 C.B.C.2d 395 (Bkrtcy.S.D.N.Y.1982). Although the Court has discretion in determining when recovery shall be allowed from a secured party,[5] factors have been established to aid the Court in the exercise of its discretion. These factors have been most clearly delineated in a decision by the Ninth Circuit Court of Appeals:

(1) Was there a reasonable expectation of consummating a reorganization plan which would have benefited secured creditors, thus justifying the imposition of charges against them which could not have been imposed in general bankruptcy proceedings?

(2) Were the services rendered by those who have been awarded allowances intended primarily to protect the interests of unsecured creditors and the debtor, or was due regard also had for the interests of secured creditors?

(3) Did those who have been awarded allowances demonstrate reasonable diligence and competence in bringing the unsuccessful reorganization proceedings to conclusion?

(4) Were the secured creditors benefited by anything which was done in the reorganization proceedings?

(5) Did the secured creditors request or consent to the bringing of the proceedings, or consent to, or waive objection to, any of the activities of the trustee [or debtor in possession] therein?

(6) Were the secured creditors responsible for any delays in connection with the proceedings, or uncooperative in the attempt to formulate an acceptable plan?

*First Western Savings And Loan Assoc. v. Anderson,* 252 F.2d 544, 548 n. 8 (9th Cir. 1958). The First Circuit has indicated its approval of this approach.[6]

▊ Applying these factors to this case does not persuade the Court that the secured creditors should be charged with any

---

**5.** *First Western Savings and Loan Assoc. v. Anderson,* 252 F.2d 544, 548 (9th Cir.1958); *Sells v. Sonoma V. (In re Sonoma V.),* 24 B.R. at 604, 10 B.C.D. at 66; *see also Charlestown Savings Bank v. Martin (In re Colonial Realty Investment Co.),* 516 F.2d 154, 159 (1st Cir. 1975).

**6.** In *Charlestown Savings Bank v. Martin (In re Colonial Realty Investment Co.),* 516 F.2d 154 (1st Cir.1975), the court noted its approval of the approach taken in *First Western* but distinguished the facts there presented. In *First Western,* the determination was made after the reorganization proceeding had failed; in *Charlestown Savings Bank,* the court was faced with the need to make the determination during the pendency of the reorganization proceedings, at a "threshold stage." This different stage at which recovery of expenses was sought from a secured party created new considerations. The court was at that time unable to determine which expenses would be of direct benefit to the secured creditors but recognized the debtor's need for funds to provide it with a fair chance of reorganizing. The court decided that a "middle ground" could be found for which the secured creditor would be charged to the extent of its *probable benefit.* This arrangement would further the interests of the secured party by protecting its collateral, and the debtor by permitting arrangement explorations to go forward. Even with the factual distinction between the two cases, the court found appropriate to its determination the considerations set forth in *First Western. Id.* at 160 n. 10.

of the costs set forth in the debtor's application.[7] First, the facts of this case leave the Court in great doubt that there could ever have been a *reasonable* expectation of consummating a reorganization plan which would have benefited the secured parties. Second, the services performed during the reorganization proceeding were primarily self-serving and intended to benefit the debtor, not the secured parties. *Cf. In re Trim-X, Inc.,* 695 F.2d 296, 301 (7th Cir. 1982) ("[A] trustee in bankruptcy acts 'not on the authority of [secured creditors] and for their interest, but on the authority of the court and for the interest of the general creditors.' ") Third, although debtor's counsel may have acted with reasonable diligence and competence in bringing the unsuccessful reorganization proceeding to an end, this was not done without a push from the secured creditors. Both creditors had filed requests for conversion before the debtor agreed to sell the property at auction, even though the debtor determined early in the case that a sale would be in the best interests of creditors and the estate. Fourth, the debtor has failed to show, nor can the Court determine, how the secured creditors were benefited by any of the acts for which recompense is now sought.[8] Indeed, some of the requested payment is for counsel fees incurred in opposition to the IRS seizure and the secured parties' requests for conversion. Had the IRS seizure proceeded to a sale of the property at that time, the secured parties would have been paid according to their priority positions.

Services rendered in the turnover proceeding to regain possession of the seized property were for the benefit of the debtor, for without a successful resolution of that action, the debtor would have been left without any business to reorganize. The actions did not benefit the secured parties.[9] In addition, a sale by the IRS within a reasonable time of the seizure would have provided a more favorable sale climate, *i.e.* early in the tourist season rather than after its close. Likewise, opposing the secured creditors' request for conversion can hardly be said to have been done for their benefit. Fifth, the secured creditors consented only to what was reasonable to allow the debtor its chance at reorganization. They did not cause the costs to be incurred, *see, e.g., In re Hotel Associates, Inc.,* 6 B.R. 108, 6 B.C.D. 939, 2 C.B.C.2d 1162 (Bkrtcy.E.D.Pa. 1980), nor impliedly consent to anything but the ordinary and necessary procedures encountered in a chapter 11 proceeding. To require secured parties to voice objections to the incurrance of ordinary expenses of a reorganization proceeding in order to protect themselves from charges under section 506(c) would waste time as well as incur greater cost to the debtor in opposing useless objections. More importantly, if the court were to indiscriminately charge secured parties with the costs of administration, secured parties would refuse to cooperate in any proceeding and would immediately seek relief from stay. The secured parties are not to be penalized for the coop-

**7.** As noted *supra,* note 5, all fees and expenses of the eventual sale of the property have already been paid from the proceeds of the sale and are not included in this discussion.

**8.** The application requests payment for the following fees and expenses: (1) $11,157.91 (less a $1,300 retainer received at the commencement of the case) for attorney fees and expenses incurred in representation of the debtor, (2) $5,843.67 for general operating expenses (utilities and insurance costs), and (3) $1,970.34 for payment of the debtor's accountant. Of the $11,157.91 requested for attorney fees and expenses, payment of $1,751.71 has already been allowed by the Court. See *supra* n. 1.

**9.** A similar situation was presented in *Sells v. Sonoma V. (In re Sonoma V.),* 24 B.R. 600, 10 B.C.D. 63 (Bkrtcy. 9th Cir.1982). The trustee

sought recovery from secured parties of costs incurred in contesting a lien on secured property claimed by Rockefeller Center Construction Corp. (RCCC). The court distinguished the interests of the parties: the debtor's interest was in the validity of the lien; the secured parties' interests were in the priority of the lien. Since elimination of RCCC's lien was essential to the debtor to provide it a chance for a successful reorganization, the litigation was for its benefit, not for the benefit of the secured parties. The services were not "reasonably and necessarily incurred and rendered for the benefit of the secured creditor[s]" and therefore were not chargeable against them. *Id.* at 605, 10 B.C.D. at 66.

eration they provide which is essential to the debtor's reorganization attempt. In this Court's experience, the cooperation between secured parties and the debtor has often been the impetus for a successful chapter 11 reorganization. Section 506(c) was never intended to place a secured creditor in the position of a guarantor of administrative expenses. Finally, the secured parties were neither responsible for delays in the reorganization proceedings nor uncooperative with the debtor's attempt to reorganize.

■ The Court recognizes that these factors are not necessarily prerequisite in allowing a secured creditor to be charged with expenses under section 506(c) "but instead constitute circumstances which may have a bearing on such an allowance." *Communication & Studies International, Ltd. v. Bank of America, N.T. & S.A. (In re World of English, N.V.)*, 21 B.R. at 527. What is required is that the costs be reasonable and necessary for preserving or disposing of the property and that there be a benefit to the secured party. *See Matter of Trim-X, Inc.; Sells v. Sonoma V. (In re Sonoma V.); see also Dozoryst II v. First Federal Savings and Loan Assoc. of Downers Grove*, 21 B.R. 392, 394 (N.D.Ill.1982) (the benefit needed to support an allowance under section 506(c) must be shown to be quantitative rather than qualitative or general); *Citibank, N.A. v. Official Creditors' Committee of Wilson Freight Co. (In re Wilson Freight Co.)*, 21 B.R. 398, 6 C.B.C.2d 958 (S.D.N.Y.1982) (when deciding whether fees of the attorney for the creditors' committee could be charged to secured parties, the court relied upon the bankruptcy court's finding that the attorney's actions benefited the secured parties); *Communication & Studies International Ltd. v. Bank of America, N.T. & S.A. (In re World of English, N.V.)*, 21 B.R. at 528 (the benefit from the services performed was sufficiently direct to allow administrative expenses to be assessed against the secured parties); *cf. Charlestown Savings Bank v. Martin (In re Colonial Realty Investment Co.)* (where the reorganization attempt is ongoing, a determination of probable benefit is sufficient to allow costs of administration to be charged to secured property).

Upon analysis of the factors considered above and the failure of the debtor to show any benefit to the secured parties arising from the general administration of the estate during the reorganization proceeding, this Court will not assess any administrative fees and expenses against the secured parties, other than that which has already been agreed to and paid.

An appropriate order will be entered.