### In re MANCHESTER HIDES, INC., Debtor.

**Bankruptcy No. 81–02178.**

United States Bankruptcy Court, N.D. Iowa.

Aug. 31, 1983.

Dennis McMenimen, Cedar Rapids, Iowa, for First Wisconsin Financial Corp.

Philip D. Brooks and J. Michael Weston, Cedar Rapids, Iowa, for applicants.

*Findings of Fact, Conclusions of Law, and ORDER re Administrative Claim No. 16*

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is an administrative claim (Administrative Claim No. 16) filed by the attorneys (Applicants) for Manchester Hides, Inc. (Debtor) seeking an allowance of $5,876.10 [1] as fees and $1,558.96 as expenses. The Trustee in his

report recommended that the claim "be allowed to the extent [they] . . . are reasonable and benefited the estate and preserved its assets as determined by the Court." First Wisconsin Financial Corp. (FWFC), as holder of a first priority security interest in virtually all of the Debtor's assets, objects to the Applicants' claim. At a pre-trial hearing on this claim, the relevant interested parties present were Dennis McMenimen for FWFC and Philip D. Brooks and J. Michael Weston for the Applicants. Briefs were filed by both the Applicants and FWFC after the hearing. The Court, being fully advised and pursuant to B.R. 752, now makes the following findings of fact, conclusions of law, and Order.

Of particular import to the issue at bar is the fact that because all funds and property of the estate are subject to a first priority security interest of FWFC, few or no funds from property of the estate are available to pay administrative expenses. Further, it should be noted that the parties have stipulated that the hourly rate at which the Applicants calculate their fees is fair and reasonable and that the services listed on the fee statements were actually rendered. Bearing these facts in mind, the merits of the dispute between the parties will be discussed.

### I. *General Principles*

In a routine Chapter 7 proceeding,[2] attorneys for the debtor may receive their fees and expenses as an administrative expense. As an "entity," *see* 11 U.S.C. § 101(14), the attorneys may "file a request for payment

---

**1.** The Applicants noted that the $5,876.10 amount has "already been discounted in the amount of . . . $3,381.10." Applicant's objection to objection filed by First Wisconsin Financial Corp. at 2.

**2.** This case was originally filed as an involuntary chapter 7 proceeding. On September 24, 1981, about three months after the filing of the involuntary petition, the Debtor sought and was granted an Order of Relief by filing a Chapter 11 Petition. The Chapter 11 proceeding, however, was converted to a Chapter 7 on February 24, 1982. This conversion may be

significant, as Chapter 7 administrative expenses have priority over Chapter 11 administrative expenses. 11 U.S.C. § 726(b); *In re Price Chopper Supermarkets, Inc.*, 19 B.R. 462, 467 (Bkrtcy.S.D.Cal.1982). The fact that few funds from the property of the estate are available to pay administrative expenses has, however, rendered any discussion on the distinction between Chapter 7 and 11 administrative expenses superfluous. For purposes of the matter at bar, therefore, this Court will simply assume that the Debtor has been seeking relief under Chapter 7 from the outset.

of an administrative expense." *Id.* § 503(a). Pursuant to this request,

> [a]fter notice and hearing, there shall be allowed administrative expenses...including—
>
> \*   \*   \*   \*   \*   \*
>
> compensation and reimbursement awarded under section 330 of this title
> ....

*Id.* § 503(b)(2). Section 330 provides:

> After notice...and a hearing, and subject to section [ ]...329 of this title, the court may award...to the debtor's attorney—
>
> (1) reasonable compensation...and
>
> (2) reimbursement for actual necessary expenses.

*Id.* § 330(a).[3] Among all the claims filed against the bankruptcy estate, a priority scheme is established by Congress. First priority is given to section 503(b) administrative expenses:

> The following expenses and claims have priority in the following order:
>
>   (1) First, administrative expenses allowed under section 503(b)....

*Id.* § 507(a)(1).[4]

The statutory scheme as presented above is translated into actual payments by section 726:

> Except as provided in section 510 of this title, *property of the estate* shall be distributed—

... first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title...

*Id.* § 726(a)(1) (Emphasis added). Thus, assuming all other hurdles have been cleared, attorneys for the debtor in a typical bankruptcy proceeding may receive their fees and expenses from "property of the estate." The case at bar involves, however, an atypical situation in that virtually all the property of the estate is encumbered by FWFC's lien. With respect to such encumbered property, the Code provides:

> After the commencement of a case under this chapter, but *before final disposition under section 726*, the trustee, after notice and hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and *that has not been disposed of under another section of this title.*

*Id.* § 725. (Emphasis added). Consistent with Code provisions, therefore, satisfaction of FWFC's lien by operation of section 725 may leave nothing for distribution under section 726. Stated succinctly, the Applicants' claim cannot be satisfied from "property of the estate" under section 726.

II. *Section 506(c)*

Cognizant that nothing can be realized under section 726, the Applicants rely on section 506(c),[5] which provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such prop-

---

**3.** In addition to the restriction created by section 329, which requires, inter alia, filing of a fee statement, 11 U.S.C. § 504 prohibits, with minor exceptions, sharing of compensation or reimbursement by attorneys with another person. Neither section 329 nor section 504 is germane here and will not be addressed.

**4.** Among the various types of administrative expenses listed in section 503(b), there is no priority. 3 *Collier on Bankruptcy* ¶ 503.04, at 503–25 (15th ed. 1983). Thus, "it is a general rule that all administrative expenses share pro-rata when an estate lacks sufficient funds to pay all administrative claimants in full." 1 W. Norton, *Bankruptcy Law & Practice* § 12.03 (1981); *see also In re National Buy-Rite*, 10 B.R. 380, 381 (Bkrtcy.N.D.Ga.1981) (attorney's

fee claim must share pro-rata with other administrative expenses).

**5.** While not urged by either party, an argument may be made that section 506(c) is among the provisions contemplated by the "that has not been disposed of under another section of this title" language in section 725. The legislative history accompanying section 725 refers to sections 554 (abandonment), 363 (sale), and 362 (stay), H.Rpt. No. 95–595, 95th Cong., 1st Sess. 382 (1977), U.S. Code Cong. & Admin. News 1978, although it is not clear that these references are exhaustive. *See id.* Suffice it to say that assuming, without deciding, that section 506(c) is a provision contemplated by section 725, the assumption will not lead to a different resolution of the claim at bar. *See infra.*

erty to the extent of any benefit to the holder of such claim.

*Id.* § 506(c) (Emphasis added). Such reliance, however, is misplaced.

Section 506(c) by its terms seems to envision a proceeding brought by the trustee to recover costs and expenses of preserving or disposing of encumbered property for the benefit of the secured creditor. Indeed, illustrative section 506(c) proceedings involve disputes between trustees and secured creditors. *E.g., In re Trim-X, Inc.,* 695 F.2d 296, 297–298 (7th Cir.1982); *In re Richards Pontiac, Inc.,* 24 B.R. 758, 759 (Bkrtcy.E.D. N.Y.1982); *In re Truitt,* 15 B.R. 169, 170 (Bkrtcy.N.D.Ga.1981); *In re Hotel Associates, Inc.,* 6 B.R. 108, 109 (Bkrtcy.E.D.Pa. 1980). FWFC, relying on *In re Codesco Inc.,* 18 B.R. 225 (Bkrtcy.S.D.N.Y.1982), asserts that section "506(c) cannot be used by the Applicants to recover fees from secured property." Brief of FWFC in support of resistance to Administrative Claim No. 16 at 2; *accord In re New England Carpet Co.,* 28 B.R. 766, 771 (Bkrtcy.D.Vt.1983).

The *Codesco* scenario involves a claim filed by the debtor's attorneys seeking to hold a secured creditor responsible for fees incurred by the attorneys during a Chapter 11 case.[6] Resolving the various issues before it, the court noted a "critical flaw" in that the attorneys for the debtor were "not the proper parties to charge the secured property for their fee in preserving or disposing of property to the extent that such conduct allegedly benefited the lienholder." 18 B.R. at 230. Indeed, the court specifically held that "[t]here is nothing in Code § 506(c) that creates an independent cause of action in favor of the debtor's attorneys

against the holders of secured claims on their collateral." *Id.* So holding, the court dismissed the application, concluding that it was "misdirected [and] impermissible." *Id.*

The *Codesco* holding was based on the "trustee may recover" language in section 506(c). To read into such language that a section 506(c) recovery is *exclusively* limited to a claim brought by the trustee may, however, be unduly restrictive. First, as recognized by Representative Edwards during the congressional debates on the Bankruptcy Reform Act, section 506(c) allows recovery by the trustee *or* the debtor-in-possession. 124 Cong.Rec. H 11095 (daily ed. Sept. 28, 1978), *reprinted in* 3 App. *Collier on Bankruptcy* at IX–98 (15th ed. 1982); *see also* 11 U.S.C. § 1107(a) ("a debtor in possession shall have all the rights . . . and powers . . . of a trustee serving in a case under this chapter"). Second, cases can be found in which the court considered section 506(c) claims brought by Chapter 11 debtors-in-possession, not the trustee, against secured creditors. *E.g., In re Sonoma V.,* 24 B.R. 600, 10 B.C.D. 63, 63 (Bkrtcy. App.Cal. 9th Cir.1982); *In re Hamilton,* 18 B.R. 868, 869 (Bkrtcy.D.Colo.1982); *In re World of English, N.V.,* 21 B.R. 524, 9 B.C.D. 308, 310 (Bkrtcy.N.D.Ga.1981). Third, at least one court has impliedly held that attorneys for the unsecured creditors' committee may recover fees from property encumbered by secured creditors. *In re Wilson Freight Co.,* 21 B.R. 398, 401 (D.C.S. D.N.Y.1982). *Contra In re S & S Industries, Inc.,* 30 B.R. 395, 10 B.C.D. 947, 948 (Bkrtcy.E.D.Mich.1983). Thus, the term "trustee" in section 506(c) does not confer·

---

**6.** The *Codesco* attorneys originally applied for interim compensation. The application could not, however, be acted upon, as the attorneys had failed to provide proper supporting documentation. Before proper documentation was resubmitted, the case was converted to a Chapter 7. Perhaps in recognition of the untimely—at least with respect to the attorneys—conversion, the court noted:

> Oftentimes the measure of success that distinguishes experienced bankruptcy counsel from attorneys who perform nonbankruptcy-related services for a debtor is their obtaining a fee while funds are available.

18 B.R. at 226. Since the Debtor in the case at bar, as did in *Codesco,* converted from Chapter 11 to Chapter 7, the Applicants herein might have experienced fee difficulties identical to that in *Codesco.* Unlike the *Codesco* court, this Court is not prepared to issue advisory observations as that quoted above. Nonetheless, this Court notes that counsel for debtors, like other claimants, may oftentimes be thrown into feedlots, seeking to preserve their own hides.

an exclusive right on the trustee to seek section 506(c) recovery.

■ The above analysis merely leads to the conclusion that either a trustee or a debtor-in-possession may seek recovery under section 506(c). The question whether attorneys for a Chapter 7 debtor may seek section 506(c) recovery has yet to be answered. Reviewing the legislative history, the language of relevant statutes, and interpretive cases, this Court concludes that the Applicants herein are not the proper parties to seek recovery under section 506(c).[7] Neither the statute nor its legislative history seems to encompass the situation in which Chapter 7 debtors' attorneys seek section 506(c) recovery. Further, this Court is unaware of any reported decision in which Chapter 7 debtors' attorneys were permitted to seek recovery under section 506(c).[8]

III. *Recovery*

■ Having concluded that Applicants are not the proper parties under section 506(c) and noting that little or no fund is available from property of the estate, the last issue before the Court is whether Applicants may nonetheless seek satisfaction of their claims from FWFC.

28 U.S.C. § 1481, made applicable during the transition period by section 405(a)(2) Pub.L. 95–598 (1978), provides:

A bankruptcy court shall have the powers of a court of equity . . . .

*See also* 11 U.S.C. § 105; *cf.* 28 U.S.C. § 2283 (Anti-injunction Act). Section 1481 thus codifies a long-recognized principle that bankruptcy courts are creatures of equity. *E.g., Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *Local Loan v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). Con-

sistent with the statutory and common-law policy, bankruptcy courts have recognized that the equitable powers conferred by section 1481 are "necessarily quite broad and flexible." *E.g., In re Parr,* 1 B.R. 453, 1 C.B.C.2d 199, 204 (Bkrtcy.E.D.N.Y.1979); *accord In re Clawson Medical, Rehabilitation & Pain Care Center,* 9 B.R. 644, 4 C.B.C.2d 73, 80 (Bkrtcy.E.D.Mich.1981). Thus, pursuant to its equity powers, the bankruptcy court "may contrive new remedies where remedies at law are inadequate." *In re Ware Spaces, Inc.,* 5 B.R. 204, 206 (Bkrtcy.D.Haw.1980). *But cf. In re Morgan,* 5 C.B.C.2d 1325, 1329 (Bkrtcy.N.D.Ohio 1981) (bankruptcy court may not, under 28 U.S.C. § 1481, vacate debts). If indeed the Applicants herein benefited FWFC, it may be equitable to charge FWFC for the value of benefits conferred. In deciding whether benefits were indeed conferred and whether equity would reward Applicants, the Court finds caselaw decided before the enactment of 11 U.S.C. § 506(c) instructive.

Courts have long recognized the equitable principle that a lienholder may be charged with the reasonable costs and expenses required to preserve or dispose of property subject to the lien to the extent that the lienholder derives a benefit therefrom. 3 *Collier on Bankruptcy* ¶ 506.6, at 506–43 (15th ed. 1953). However, the full amount of the costs and expenses is recoverable only if the lienholder has impliedly or expressly consented or caused to be incurred. *See e.g., In re Trim-X, Inc.,* 695 F.2d at 301; *In re Colonial Realty Investment Co.,* 516 F.2d 154, 159 (1st Cir.1975); *First Western Savings & Loan Association v. Anderson,* 252 F.2d 544, 547 (9th Cir.1958); *Miners Savings Bank v. Joyce,* 97 F.2d 973, 977 (3rd Cir.1938); *In re Richards Pontiac, Inc.,* 24 B.R. at 760; *In re Hotel Associates Inc.,* 6 B.R. at 111; Rubin, *Allocation of Reorgani-*

---

**7.** This conclusion is not intended to mean that only the trustee or the debtor-in-possession may properly seek section 506(c) recovery. Rather, the conclusion is limited to the context of the dispute over Administrative Claim No. 16. Whether claimants other than the Applicants herein who have similarly filed administrative expense claims may invoke section

506(c) is a question not before the Court at this time and need not be decided.

**8.** Assuming arguendo that Chapter 7 debtors' attorneys may recover under section 506(c), no recovery should be awarded Applicants herein, as they fail to meet the standards established by case law. *See* Div. III, *infra.*

*zation Expenses,* 51 Yale L.J. 418, 420 (1942). *But see In re World of English,* 21 B.R. 524, 9 B.C.D. at 310 ("consent . . . not required for the assessment of costs and expenses against a secured creditor's interest to the extent to which that interest is benefited") (citing *United States v. Henderson,* 274 F.2d 419, 423 (5th Cir.1960)). For example, in situations where the lienholder had not caused or consented to the administration of the collateral, the recovery was limited to the lienholder's saved foreclosure costs, if any. *E.g., In re Richards Pontiac, Inc.,* 24 B.R. at 760; *In re Street,* 184 F.2d 710, 711–12 (3d Cir.1950); *see also In re Truitt,* 15 B.R. at 171. Relevant factors in determining whether benefit was conferred include:

(1) Was there a reasonable expectation of consummating a reorganization plan which would have benefited secured creditors, thus justifying the imposition of charges against them which could not have been imposed in general bankruptcy proceedings? (2) Were the services rendered by those who have been awarded allowances intended primarily to protect the interests of unsecured creditors and the debtor, or was due regard also had for the interests of secured creditors? (3) Did those who have been awarded allowances demonstrate reasonable diligence and competence in bringing the unsuccessful reorganization proceedings to conclusion? (4) Were the secured creditors benefited by anything which was done in the reorganization proceedings? (5) Did the secured creditors request or consent to the bringing of the proceedings, or consent to, or waive objection to, any of the activities of the trustee therein? (6) Were the secured creditors responsible for any delays in connection with the proceedings, or uncooperative in this attempt to formulate an acceptable plan?

*First Western Savings & Loan Association,* 252 F.2d at 548 n. 8, *accord, e.g., In re Korupp Associates, Inc.,* 30 B.R. 659, 8 C.B. C.2d 877, 880 (Bkrtcy.D.Me.1983); *In re Hotel Associates, Inc.,* 6 B.R. at 113; *In re World of English,* 21 B.R. 524, 9 B.C.D. at 310 n. 2.

Applying the above guidelines and factors to the case at bar, this Court is unable to determine from the brief listing and discussion of services and expenses that any activity was "caused" by FWFC. It does not appear, for example, that costs and expenses were "caused" by any failure by FWFC to respond promptly to or participate in various proceedings. *See In re Trim-X, Inc.,* 695 F.2d at 301 (secured creditor "caused" expenses by failing to respond promptly to trustee's abandonment petition); *cf. In re Korupp Associates, Inc.,* 30 B.R. 659, 8 C.B.C.2d at 882. Stated otherwise, there is insufficient information from which this Court could determine that FWFC was "responsible for any delays." *First Western Savings & Loan Association,* 252 F.2d at 548 n. 8. Similarly, it does not appear that any of the activities were "consented to" by FWFC. More importantly, it does not appear that the Applicants' efforts were intended primarily to protect FWFC's interests. For example, the Applicants' itemization reveals numerous conferences and services concerning the Debtor and its President, utility service interruption, embezzled funds, preparation of schedules, "procedural aspects of Chapter 11 reorganization," criminal charges against corporate employees, discovery on Ohsman's (other creditor) claim, problems with Ohsman and Aurora (other creditor), recovery of corporate debts, posture of and meetings with trustee, attempts to gain financing from New York to restart plant, and acceptance or rejection of the "Aurora plan." It is difficult to determine how these conferences and services benefited FWFC. Indeed, a closer review of the itemization reveals that conferences and discussions were held concerning "rumors that 1st Wi Financial Corp. has defamed" Debtor, "evidence of bad faith dealing by bank," "analysis of possible litigation against 1st Wi.," and motion to convert filed by FWFC. These activities obviously were directed against FWFC, not for FWFC's benefit.

Turning to the disbursement itemization, the record reveals expenses for filing Chapter 11 Petition, postage for materials sent

to Doug Gowan, travel to Dubuque (purpose not specified), travel to Chicago (purpose not specified), and "room and car" (purpose not specified). These expenses, like the claims for services, do not appear to benefit FWFC.

IV. *Conclusion*

This Court is not unaware of the congressional policies of encouraging members of the bar to render the necessary and exacting services that bankruptcy cases require, S.Rep. 95–989, 95th Cong., 2d Sess. 40 (1978), and of encouraging "[b]ankruptcy specialists, who enable the system to operate smoothly, efficiently, and expeditiously...[to] remain in the bankruptcy field." H.Rep. 95–595, 95th Cong., 1st Sess. at 330 (1978), U.S.Code Cong. & Admin. News 1978, p. 6286. Such policies, however, must be balanced against the express statutory language, other relevant legislative history, and well-reasoned decisional law.[9] When such a balance is struck, this Court concludes that Applicants herein are not the proper parties to seek section 506(c) recovery. Further, this Court concludes that on equitable grounds the Applicants should not be awarded property and funds subject to FWFC's lien, as they have failed to show that any service or expense benefited FWFC. The objection filed by FWFC to the Applicants' claim (Administrative Claim No. 16) is therefore sustained.

The sole remaining issue concerning Administrative Claim No. 16 is whether the Trustee's recommendation should be adopted or overruled. As indicated earlier, the Trustee recommended that the claim "be allowed to the extent [they]...are reasonable and benefited the estate and preserved its assets as determined by the Court." *See* 2 *Collier on Bankruptcy* ¶ 330.04 (15th ed. 1982) (debtors' attorneys may be compensated under § 330 only if services benefited estate); *In re Howerton,* 23 B.R. 58, 59 (Bkrtcy.N.D.Tex.1982). Because it appears that the estate has no property or fund for distribution, this Court declines to decide whether the claim should be allowed or not at this time. Suffice it to say that by sustaining FWFC's objection, the propriety and allowability of Administrative Claim No. 16 may be moot; and

IT IS SO ORDERED.

**9.** One bankruptcy court has eloquently summarized the relevant considerations as follow:

[I]f the court were to indiscriminately charge secured parties with costs of administration, secured parties would refuse to cooperate in any proceeding and would immediately seek relief from stay. The secured parties are not to be penalized for the cooperation they provide which is essential to the debtor's reorganization attempt.... Section 506(c) was never intended to place a secured creditor in the position of a guarantor of administrative expenses. Finally, the secured parties were neither responsible for delays in the reorganization proceedings nor uncooperative with the debtor's attempt to reorganize. *In re Korupp Associates, Inc.,* 30 B.R. 659, 8 C.B.C.2d at 882.