OPINION OF THE COURT
A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
This appeal requires us to determine whether the bankruptcy court correctly ordered that payments be made to a utility for providing post-petition service. Because we hold that the bankruptcy court correctly ordered payment, based on § 506(c) of the Bankruptcy Code, we will reverse the district court, thereby affirming the action of the bankruptcy court.
I.
In September 1983, McKeesport Steel Castings Co., the debtor in possession, voluntarily instituted Chapter 11 (reorganization) proceedings, pursuant to the Bankruptcy Code. The bankruptcy court ordered the debtor to stay current in its post-petition utility bills. Appellant, Equitable Gas Co., as it was required to do under 11 U.S.C. § 366(b), accepted a cash deposit as “adequate assurance” of payment and continued to provide gas service. App. at 119.
Appellees, Equibank and Condec Corporation (hereinafter referred to as Equibank), the largest of McKeesport’s secured creditors,[1] moved in bankruptcy court to enter consent orders restricting the debtor’s use of its cash collateral. The first two orders (November 2, 1983 and January 30, 1984) permitted McKeesport to use its cash collateral to pay for raw materials, supplies and utility bills, app. at 130; the third granted a superpriority to entities providing raw materials, utilities and supplies to be used in McKeesport’s manufacturing process, app. at 141.
During the period in which the parties negotiated and the bankruptcy court entered these orders, the debtor stopped paying Equitable Gas. Equitable promptly petitioned for permission to terminate service. In April 1984, the bankruptcy court approved a payment timetable, but denied Equitable’s right to terminate service, app. at 20-21. The court also denied Equitable permission to terminate service automatically upon noncompliance with the payment schedule. Although the debtor subsequently breached the payment agreement, Equitable Gas continued to provide natural gas pursuant to the bankruptcy court’s order. On May 31, 1984, Equitable notified the bankruptcy court that debtor had not made the first required payment, and that it desired a prompt hearing on its motion to terminate service. A hearing was held June 20, 1984. At that time another payment schedule was arranged, and Equitable was again denied permission to terminate without leave of court in the event of noncompliance. The court made it clear that it was seeking to protect the lienhold-ers by assuring that the business could be sold as a going concern on July 10, 1984. The court did grant Equitable a superpriority for the period from the hearing until July 9. App. at 25-33. Because of misunderstandings, the sale was not held on July 10, but was continued until July 26, 1984, at which time McKeesport was sold as a *93 going concern for $500,000. At that time it was stipulated that the debtor was $57,-261.16 in arrears for post-petition gas service. The distribution to creditors, however, was subject to future claims approved by the court. App. at 85.
In December 1984, Equitable moved for payment for post-petition gas service, and the bankruptcy court granted payment in May 1985. Equibank then appealed this order to the district court, which reversed the bankruptcy court. Equitable Gas now appeals the order of the district court.
II.
Equitable Gas contends that the bankruptcy court’s order granting payment was justified on a number of bases. Equitable argues that we may sustain the payment under 11 U.S.C. § 506(c), as a necessary cost or expense of preserving or disposing of the debtor’s property, or pursuant to § 366(b), which provides that a utility may discontinue service if it is not furnished adequate assurance of payment for that service. Additionally, Equitable maintains that pursuant to paragraph 4 of the third cash collateral order, app. at 141, it has a superpriority claim mandating payment for gas service it provided. Finally, Equitable alleges that failure to affirm the bankruptcy court’s order will result in a violation of the fifth amendment — the taking of private property for a public use, without just compensation.
The standards of review applicable when the Court of Appeals reviews a decision of the district court on appeal from the bankruptcy court are set forth in Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1981).
As an appellate court twice removed from the primary tribunal, we review both the factual and the legal determinations of the district court for error. The district court does not sit as a finder of facts in evaluating them as a court of review, and therefore its evaluation of the evidence is not shielded by the “clearly erroneous” standard of Fed.R.Civ.P. 52(a), which applies only to a trial court sitting as a fact finder. We are in as good a position as the district court to review the findings of the bankruptcy court, so we review the bankruptcy court’s findings by the standards the district court should employ, to determine whether the district court erred in its review. To the extent the parties challenge the choice, interpretation, or application of legal precepts, we always employ the fullest scope of review: we examine the decision of the court from which the appeal is taken for error, and the legal determinations of the district court as a reviewing tribunal are not shielded by any presumption of correctness.
Id. at 101-02. We now turn to a discussion of appellant’s contentions.
III.
Section 506(c) of the Bankruptcy Code provides that: “The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.” 11 U.S.C. § 506(c). The bankruptcy court’s decision to award payment to Equitable Gas was based primarily on this section. App. at 118-22. The district court found this section inapplicable for a number of reasons, including concern over Equitable’s standing to recover under § 506(c) and Equitable’s failure to benefit the secured creditors by continuing to provide gas service to the debtor. App. at 273-83. The district court’s conclusions, however, are incorrect.
A number of courts have held that parties other than the trustee have standing to recover under provisions stipulating that only the trustee may act. In In re Philadelphia Light Supply Co., 39 B.R. 51 (Bankr.E.D.Pa.1984), the court permitted the creditors committee to bring a section 547 preference action where the trustee/debtor in possession refused to act and the creditors had a colorable claim. Accord In re Monsour Medical Center, 5 B.R. 715 (Bankr.W.D.Pa.1980). A landlord *94 recovered his expenses, pursuant to § 506(c), in In re Isaac Cohen Clothing Corp., 39 B.R. 199 (Bankr.S.D.N.Y.1984). Finally, in In re T.P. Long Chemical, Inc., 45 B.R. 278 (N.D. Ohio 1985), the court permitted the Environmental Protection Agency (EPA) to bring a section 506(c) suit because it found that the EPA had assumed the trustee’s duty to remove hazardous waste. But see In re Fabian, 46 B.R. 139 (Bankr.E.D.Pa.1985) (reliance on In re Codesco); In re Codesco, Inc., 18 B.R. 225 (Bankr.S.D.N.Y.1982) (strict interpretation of § 506(c) permitting only trustee to recover).
Based on the above cases, we hold that Equitable Gas has standing to recover. The rule that individual creditors cannot act in lieu of the trustee is often breached when sufficient reason exists to permit the breach. In this case, neither the debtor in possession nor a creditors committee had reason to make a claim on behalf of Equitable, when the debtor thereby would be required to pay for utilities it had received without charge following the date that its petition was filed. Thus, because Equitable Gas had a colorable claim for expenses and was the only creditor that would zealously pursue that claim, it has standing to bring a § 506(c) action. See In re Isaac Cohen Clothing Corp., 39 B.R. 199 (landlord was only creditor with reason to bring § 506(c) action).
Appellee Equibank argues that even if Equitable Gas had standing, the fact that Equitable supplied gas did not benefit the secured creditors. Appellee relies on In re Flagstaff Food Service Corp., 762 F.2d 10 (2d Cir.1985), in which the court denied recovery for payment of payroll taxes. In that case, the court rejected the general assertion that payment of the taxes contributed to reorganization and increased the going concern value of the assets. Rather, the court required the debtor to “show that its funds were expended primarily for the benefit of the creditor and that the creditor directly benefitted from the expenditure.” Id. at 12. In accepting appellee's argument, the district court relied on Miners Savings Bank v. Joyce, 97 F.2d 973 (3d Cir.1938), which held that expenses necessary to preserve the property, but not operating expenses of a business, are recoverable.
In contrast, in In re Afco Enterprises, Inc., 35 B.R. 512 (Bankr.D.Utah 1983), the court adopted a much broader formula for determining benefit. The court stated that: “The definition of benefit encompasses more than the bottom line of a balance sheet. Preservation of the going concern value of a business can constitute a benefit to the secured creditor.” Id. at 515. See also In re World of English, N.V., 21 B.R. 524, 527-28 (N.D.Ga.1982) (applying liberal interpretation in holding that keeping debt- or in business constituted preservation of property).
We choose to follow the broad interpretation of benefit used in Afco Enterprises. As the bankruptcy court recognized, preserving McKeesport Steel Castings as a going concern benefited Equibank. The bankruptcy court found that “Equibank three times agreed to the use of cash collateral and the provision of the original order permitting payment of utility bills with same was never modified. Furthermore, almost all of the gas service for which Equitable seeks payment was used in Debtor’s manufacturing process. Equibank and Condec agreed to the sale of Debtor’s assets as a going concern and the purchase price included customer lists and work in progress. If gas service had been terminated, Equibank’s and Condec’s recovery would have been significantly less since these assets either would not have existed or would have been worth little, if anything. Equibank particularly would have been affected because its security interests in inventory and accounts receivable were subordinated to certain other claims in paragraphs 4 through 7 of the Third Cash Collateral Order.” App. at 120-21. Indeed the bankruptcy court held that “[t]he continued gas service in the instant matter *95 benefited both Condec and Equibank in that it preserved the Debtor’s business and permitted the sale of the assets as a going concern which provided a greater return to the secured parties than they would have received in other circumstances.” App. at 121.
Thus, even under the stricter test of Flagstaff, by providing natural gas to the debtor, Equitable benefited the secured creditors. Because distribution was made only to secured creditors, the increased price realized when McKeesport was sold as a going concern directly benefited those creditors.[2]
IV.
Thus, we hold that the bankruptcy court correctly ordered payment to be made to Equitable Gas for providing post-petition gas service as an administrative expense necessary to preserve the going concern value of the debtor’s estate. Because we uphold the action of the bankruptcy court based on § 506(c), we need not consider the parties’ other statutory and constitutional arguments. The order of the district court will be reversed, and the order of the bankruptcy court will be affirmed.

. Equibank was secured by McKeesport’s inventory and accounts receivable. Condec was secured by McKeesport’s real property, fixtures and equipment.

. We address only one other minor point raised by Equibank. At bottom, all of Equibank’s arguments, which were accepted by the district court, rest on a fundamental mischaracterization of the situation. Equibank attempts to equate the secured creditors with the debtor, thus arguing that the bankruptcy court abused its discretion because it ordered the secured creditors to pay the debtor’s utility bills. Equitable Gas was paid out of the property of the debtor’s estate; distribution of the assets was subject to future claims approved by the bankruptcy court. To the extent that approval of claims diminished the distribution, the secured creditors received less money than they might have. But the money they receive is only "theirs” once all the valid administrative claims are paid out of the debtor’s estate.